**UNITED STATES of America, Appellee,**

v.

**Steven B. ZACKSON, Defendant–Appellant.**

**No. 891, Docket 92–1525.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1993.

Decided Oct. 4, 1993.

Barry Levin, Garden City, NY (Kelly Foley, Gerst, Konigsberg & Levin, of counsel), for defendant-appellant.

Geoffrey S. Mearns, Asst. U.S. Atty., Brooklyn, NY (Mary Jo White, U.S. Atty., E.D.N.Y. and Susan Corkery, Asst. U.S. Atty., of counsel), for appellee.

Before: NEWMAN,* PIERCE and JACOBS, Circuit Judges.

PIERCE, Circuit Judge:

Steven B. Zackson appeals from a judgment of conviction and sentence entered in the United States District Court for the Eastern District of New York after a jury trial before Eugene H. Nickerson, *Judge.* Zackson was convicted of conspiring to distribute and to possess with intent to distribute marijuana and cocaine, each in violation of 21 U.S.C. § 846, et al., and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), et al. He presently is incarcerated and is serving a prison term of 151 months; he also was sentenced to a five-year term of supervised release, a fine of $50,000, and a special assessment of $150.

* After argument but before decision, Judge Newman became Chief Judge.

We affirm the judgment of conviction and sentence but remand for an adequate statement of reasons for the sentence.

## BACKGROUND

On January 14, 1991, the government filed a three-count superseding indictment in the United States District Court for the Eastern District of New York. Count One of the indictment charged Zackson, Peter Lagatta and Henry Acierno, with conspiring, between May 1987 and March 7, 1989, to distribute marijuana and to possess it with intent to distribute it; Count Two charged Zackson and Lagatta with conspiring, between June 1990 and December 19, 1990, to distribute cocaine and to possess it with intent to distribute it; and Count Three charged that between June 1990 and December 19, 1990, Zackson and Lagatta possessed cocaine with intent to distribute it—all in violation of federal laws.

Zackson was tried before a jury on all three counts and was found guilty after the presentation of evidence from which the account that follows can be drawn.

### I. *The Marijuana Conspiracy*

In March of 1989, Angelo Grieco, a former member of a marijuana distribution organization, was contacted by his former associate, Peter Lagatta. Lagatta asked Grieco if he would "hold on to some luggage" for Lagatta. Grieco testified that he understood this to mean that Lagatta was asking him to hold some marijuana. Grieco agreed to hold the marijuana and Lagatta informed him that a friend would contact him. Thereafter, Zackson contacted Grieco who recalled first meeting him in the summer of 1987 in connection with earlier marijuana distribution activities.

On March 6, 1989, Zackson brought three bales of marijuana to Grieco's home. Grieco and Zackson then went to Zackson's condominium where five more bales of marijuana were retrieved and brought to Grieco's apartment. Grieco testified that after Zackson left his apartment, he contacted the Drug Enforcement Agency (the "DEA"). Shortly thereafter, a number of DEA agents arrived at Grieco's apartment, including Detective Raymond Tkacz, who was a member of a DEA Task Force. At the request of DEA agents, Grieco telephoned Lagatta—Grieco and Lagatta had three brief phone conversations, which were tape-recorded by Tkacz with Grieco's consent. These tapes were played for the jury. Grieco testified that during these conversations he asked Lagatta to remove the marijuana from his apartment. The following day, March 7, 1989, Lagatta and Zackson arrived at Grieco's apartment and the three of them loaded the bales of marijuana into two vehicles, one driven by Zackson and the other by Lagatta. Detective Tkacz testified that Lagatta and Zackson drove away, but were arrested within a few blocks of Grieco's apartment by DEA agents.

According to DEA Agent Nicholas Alleva, Zackson was taken to the DEA office in Westchester County, where he was processed, and later he was arraigned on a complaint in the United States District Court for the Southern District of New York—the complaint was later dismissed without prejudice. Meanwhile, Lagatta was also taken to the Westchester County DEA office and processed, but criminal proceedings were deferred because he agreed to assist Agent Alleva in attempting to locate Constabile "Gus" Farace, who was being sought in connection with the murder of DEA Agent Everett Hatcher. Agent Alleva informed Lagatta that if he cooperated fully with the government and promised not to commit any crimes in the future, the DEA would speak with the prosecutor about "holding a judicial proceeding against him in abeyance." Between March 1989 and November 1989, Lagatta worked under Agent Alleva's supervision "gathering intelligience [sic] and collecting evidence" in an effort to locate Farace.

On April 20, 1990, Zackson was indicted by a grand jury in the Eastern District of New York for his involvement in the subject marijuana distribution conspiracy and he was arrested by Detective Tkacz shortly thereafter. En route to his arraignment, Tkacz explained the charges to Zackson and informed him that if he wished to cooperate with the government, it was possible that the charges against him "could be lessened." Zackson responded that he wanted to cooperate but

that he feared for his and his family's safety. He also stated that he did not want his attorney to know that he was cooperating with the government. Zackson, Detective Tkacz, John Gleeson and Geoffrey Mearns—the latter two, Assistant United States Attorneys ("AUSA")—appeared before Judge Reena Raggi of the Eastern District of New York on May 3, 1990 to discuss Zackson's desire to cooperate without the benefit of counsel. After being informed by Judge Raggi of his rights and the risks of speaking to government agents without the assistance of counsel, Zackson, nevertheless, agreed to cooperate with the government without being represented by counsel. Judge Raggi then sealed the record of those proceedings.

Detective Tkacz testified at the trial that thereafter he met with Zackson on two occasions between May and June 1990. During these meetings, Zackson revealed that he had been approached by a Colombian man named "Julian" about purchasing multi-kilogram quantities of cocaine. Zackson agreed to attempt to introduce Tkacz to Julian as a potential buyer of cocaine. Zackson subsequently informed Tkacz that he was unable to contact Julian despite several attempts to page him on his beeper. In addition to informing Tkacz about Julian during this period of cooperation, Zackson acknowledged his involvement in the subject marijuana scheme. Later, Zackson discontinued his cooperation with the government.

On June 26, 1990, in an *ex parte* proceeding before Judge Raggi, AUSAs Gleeson and Mearns informed the court of Zackson's decision to cease cooperating. The next day, on June 27, 1990, in a proceeding which was attended by the government and Zackson's counsel, Judge Raggi unsealed the transcripts of that proceeding, the *ex parte* proceeding of June 26, 1990, and the one that occurred on May 3, 1990. Thereafter, the government provided Zackson's counsel with copies of both transcripts, and informed him of the substance of the statements Zackson had made to Detective Tkacz.

## II. The Cocaine Conspiracy

One of the government's principal witnesses against Zackson with respect to the cocaine charges was Alexander Guzman–Tabora. Guzman–Tabora testified at Zackson's trial that in September, 1990 he began to work for Julian Aterortua ("Julian") delivering cocaine. Julian, he stated, informed him that he had delivered five kilograms of cocaine to Zackson during the summer of 1990 and Zackson had not yet paid him the $150,000 he owed for the drugs. Guzman–Tabora testified that he met with Zackson in October 1990 to "pressure" him to pay Julian the money he owed. Accompanied by Julian, he met with Zackson on several occasions during October and November of 1990 concerning the debt and, on at least one occasion, he testified, Zackson was accompanied by Lagatta. Lagatta met with Julian and Guzman–Tabora alone at least once and spoke with them by phone about the cocaine deal. At the time, according to Agent Alleva, Lagatta was still a DEA confidential informant, although he never revealed the cocaine transaction with Julian to Agent Alleva or any other DEA representative.

Since he continued to be unsuccessful in collecting the money he sought from Zackson, Julian instructed Guzman–Tabora to kidnap Zackson. After Guzman–Tabora responded that kidnapping Zackson did not appear feasible, Julian gave orders to kidnap Lagatta instead, and Lagatta was kidnapped by Guzman–Tabora and two accomplices on December 17, 1990. Thereafter, Guzman–Tabora informed Zackson that, in order to secure Lagatta's release, he had to pay Julian $200,000. After two days, Zackson had only managed to gather $10,000 and the deed to Lagatta's home. Unable to raise any more money, and fearing for Lagatta's safety, Zackson contacted his attorney, Michael S. Washor, who, in turn, informed the Federal Bureau of Investigation ("FBI") of the kidnapping. On December 20, 1990, the FBI rescued Lagatta unharmed. Later that day, both Lagatta and Zackson were arrested for their participation in the cocaine transaction, which occurred during the summer of 1990.

## III. Trial Proceedings

The April 1990 indictment against Zackson on the marijuana charge was superseded by the subject three-count indictment and he

and his co-defendants were arraigned thereon on January 17, 1991, before Judge Nickerson of the Eastern District of New York. Trial on the original indictment had been scheduled to begin on February 4, 1991. However, in light of the additional charges included in the superseding indictment, Judge Nickerson offered to sever Zackson's trial on Count One, the marijuana charge, from the trial on Counts Two and Three, the cocaine charges.

Washor, Zackson's attorney, opposed the severance and asked for an opportunity to address the severance issue in writing. Judge Nickerson agreed and reserved decision. In a letter dated January 23, 1991, Washor renewed his opposition to Judge Nickerson's severance proposal. Washor argued that "Zackson's defenses [were] inexplicably [sic] interwoven with the defendant Lagatta and that unless they [were] presented at a joint trial of *all Counts* defendant Zackson [would] be extremely prejudiced." (emphasis in original). Washor also argued that the marijuana and cocaine charges "invite[d] overlapping and joint proof," and involved essentially the same witnesses and the same defenses. Ultimately, the government and the district court acquiesced in Washor's request that a severance not be ordered with the result that Zackson was scheduled to proceed to trial on all three counts of the superseding indictment.

During the interim, however, Zackson obtained new counsel, Robert L. Ellis, Esq., who, on May 23, 1991, filed supplemental pre-trial motions on Zackson's behalf including: (1) a motion for severance from the charges against Lagatta on the ground that Zackson and Lagatta had mutually antagonistic defenses with respect to the cocaine charges; (2) a motion for severance of the marijuana charge from the cocaine charges on the grounds of potential prejudicial spillover; and (3) a motion for disclosure by the government of the full extent of Lagatta's role as an informant.

Although the government agreed to sever Lagatta's trial on all three counts of the superseding indictment from Zackson's, it opposed a severance of the marijuana and cocaine charges against Zackson arguing that because the two narcotics charges were factually related, the evidence with respect to each of the crimes charged would be admissible in separate trials. In response to Zackson's motion concerning the extent of Lagatta's cooperation, the government submitted an affidavit from Agent Alleva dated May 28, 1991, which stated, *inter alia*, that (1) once Farace had been murdered, Lagatta's role as an informant was "substantially diminished;" (2) at no time did Agent Alleva authorize Lagatta to engage in any criminal activity for which Lagatta and Zackson were indicted; (3) Lagatta did not provide any information to Alleva about Zackson's relationship with his attorneys; (4) Lagatta did not provide any confidential information concerning Zackson's past or current criminal activities, including narcotics trafficking; and (5) Agent Alleva never conveyed to AUSA Mearns any confidential information Lagatta may have provided about Zackson.

In a memorandum order decided July 26, 1991, Judge Nickerson denied Zackson's motion to sever the marijuana charge from the two cocaine charges because Zackson had failed to demonstrate "substantial prejudice" warranting a severance, although, at an earlier status conference, he had granted Zackson's motion to sever his trial from Lagatta's. With respect to a claim by Zackson that he should be allowed to review Lagatta's confidential informant file, Judge Nickerson decided to conduct an *in camera* review of the file to determine if anything therein should be disclosed to Zackson.

On October 7, 1991, at the start of Zackson's trial, Judge Nickerson inspected Lagatta's confidential informant file and determined that, other than documents already provided by the government from the file, it did not contain any information that constituted exculpatory material within the meaning of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

During Zackson's trial on the marijuana and cocaine charges, the government called several witnesses including Angelo Grieco and Henry Acierno, who testified concerning Zackson's involvement in the marijuana conspiracy, and Guzman–Tabora, who testified with respect to the cocaine charges. All

three testified pursuant to written cooperation agreements with the government. The prosecution also played several tape-recorded telephone conversations including some in which Zackson was a participant. Zackson was found guilty by the jury on all three counts of the superseding indictment.

Prior to sentencing, Zackson filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure based primarily upon two claims: (1) that the government suppressed exculpatory evidence of Lagatta's role as a confidential informant; and (2) that Washor's conduct as Zackson's prior attorney constituted ineffective assistance of counsel.

In support of the latter claim, Zackson submitted an affidavit from Washor in which Washor claimed to have made the decision to oppose Judge Nickerson's preliminary decision to sever the marijuana and cocaine charges without consulting Zackson. Washor stated that his decision was motivated by the "enormous time constraints" that would have resulted from representing Zackson in two separate trials in light of his earlier-made trial commitments to another client. Additionally, Washor expressed his concern that separate trials would have subjected Zackson to "unnecessary financial burdens."

The district judge denied Zackson's new trial motion at the sentencing hearing on August 14, 1992. At that hearing, Zackson also requested a downward departure from the applicable Sentencing Guidelines range of 121–151 months. Zackson's attorney argued that under Guidelines § 5K[2].13 the court should allow a downward departure based on Zackson's alleged diminished capacity since Zackson, *inter alia*, claimed impairment of his cognitive ability and recollection resulting from head injuries sustained in an automobile accident in 1983. Judge Nickerson, after stating that he had "considered everything," sentenced Zackson to a prison term of 151 months, a five-year period of supervised release, a fine of $50,000 and a $150 special assessment.

## DISCUSSION

Zackson raises numerous issues on appeal. He principally asserts that the government suppressed exculpatory evidence in violation of the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), thus entitling him to a new trial. He also urges a reversal of his conviction because of ineffective assistance of counsel, and he challenges the trial court's denial of his motion to sever Count One from Counts Two and Three of the superseding indictment. In addition, Zackson contests the sentence imposed by the trial judge.

### I. *Alleged Withholding of Exculpatory Evidence*

■ Zackson asserts that he is entitled to a new trial because he discovered, after his conviction, that the government deliberately withheld exculpatory material required to be disclosed under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady,* "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1197. The government may also have a duty to disclose such exculpatory evidence even when the defense makes no specific disclosure request. *See United States v. Agurs,* 427 U.S. 97, 110–11, 96 S.Ct. 2392, 2400–01, 49 L.Ed.2d 342 (1976).

Zackson alleges two related *Brady* violations: (1) that the government failed to reveal the true extent of Lagatta's role as a confidential informant; and (2) that the government "acquiesced in the submission of a perjurious affidavit of Special Agent Alleva which severely understated Lagatta's role as an informant." This information, Zackson argues, was "material," and "had it been disclosed [during the trial], would have created a 'reasonable doubt' as to Zackson's guilt in relation to [the cocaine charges]." Relying on *United States v. Agurs,* Zackson argues that his conviction must be set aside because the alleged "affirmative misrepresentation" contained in the affidavit and the withholding of the requested information aid-

ed the government in obtaining his conviction.

■ We believe that Zackson's charge that the government suborned perjury is without merit. Agent Alleva's affidavit, dated May 28, 1991, was submitted in opposition to Zackson's pretrial motion for disclosure of Lagatta's confidential informant file. The affidavit indicated, *inter alia*, that although Lagatta occasionally provided confidential information, "[a]fter Farace was killed in November 1989, LaGatta's role as a confidential informant was substantially diminished." The affidavit also stated that Alleva received no information from Lagatta about Zackson's "past or current criminal activities," nor about Zackson's relationship with any of his attorneys. Mostly, Zackson charges in conclusory fashion that all of these statements were perjurious.

On July 16, 1991, at a hearing on a motion by Lagatta to dismiss the marijuana charge, held nearly three months before Zackson's trial, Agent Alleva testified at some length concerning Lagatta's role as an informant. Specifically, Alleva testified that after Farace was killed, Lagatta continued to cooperate with the government by, *inter alia*, "urging and working with Steve Zackson to deliver a quantity of cocaine from an individual known as Julian." Alleva went on to explain that Lagatta had agreed to "prod Zackson into cooperating" so that Zackson "could help himself as Mr. Lagatta was helping himself."

Viewed in context, Agent Alleva's statements in his affidavit are not inconsistent with his subsequent trial disclosures concerning Lagatta's role as an informant, nor with his July 16, 1991 testimony. Alleva's statements reasonably could be understood to mean that Lagatta was used primarily for the Farace investigation, although Lagatta continued to curry favor with the DEA even after Farace's death by promising to encourage Zackson to become an informant. Moreover, Zackson offers no evidence from which we can infer that Lagatta ever improperly conveyed confidential information to the government concerning Zackson. Thus, we believe that the statements in Alleva's affidavit were neither false nor misleading. We find no basis for concluding that Alleva's affidavit was perjurious and we see no reason to conclude that the government's submission of it in opposition to Zackson's May 20, 1991 motion for disclosure of Lagatta's confidential informant file was a denial of due process.

■ We also reject Zackson's second claim, that the government deliberately suppressed evidence that it was required to disclose. "Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983) (citations omitted). In *LeRoy,* we concluded that the government was not obligated to disclose allegedly exculpatory grand jury testimony when the appellant knew long before trial the identity of the witnesses and that they would be testifying before the grand jury. *LeRoy,* 687 F.2d at 618–19. The defendant in that case could have subpoenaed the witnesses to testify at his trial. We noted that "[t]he rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government." *LeRoy,* 687 F.2d at 619. Similarly, we believe that Zackson had sufficient knowledge concerning Lagatta to allow him to take advantage of any potentially exculpatory evidence pertaining to Lagatta's role as a confidential informant.

Zackson does not deny knowing before trial that Lagatta was a confidential informant.[1] He now claims, however, that he was misled by Agent Alleva's affidavit into believing that Lagatta's cooperation related only to the Farace investigation. He further charges that, in contrast to the assertions in

---

1. Zackson, in fact, filed a motion on May 23, 1991, five months before trial, seeking disclosure of Lagatta's confidential informant file.

Alleva's affidavit, Alleva's testimony at the July 16, 1991 hearing revealed evidence that Lagatta held a more "expansive role" as an informant. It is this evidence of Lagatta's claimed "expansive role" that constitutes the alleged exculpatory *Brady* material Zackson contends the government was required to disclose. Zackson argues that the information was "suppressed" because the government never notified him of the July 16, 1991 hearing date, nor of the substance of Alleva's testimony. Moreover, Zackson claims to have discovered this information only after his conviction which, he asserts, prevented him from calling Agent Alleva to testify at his trial.

While it may be true that Zackson received no prior notice of Lagatta's hearing, evidence in the record suggests that Zackson was nevertheless aware that the issue of the extent of Lagatta's cooperation may have warranted some additional investigation. For example, prior to trial, in support of Zackson's motion for disclosure of Lagatta's confidential informant file, Zackson's new attorney, Robert Ellis, argued that "*subsequent disclosures* make it very clear that [Lagatta's] cooperation went way behind [sic] Farrace [sic], and he was generally cooperating in trying to make cooperators for the DEA." (emphasis added). Although it is not clear just what "subsequent disclosures" Zackson's attorney was referring to, it does appear that he was aware of the substance of Agent Alleva's testimony at the July 16th hearing, to wit, that Lagatta was working with the government in an effort to convince Zackson to cooperate with the DEA. That this statement by Ellis was made just prior to Zackson's trial calls into question Zackson's claim that the extent of Lagatta's role as a confidential informant was discovered only after his conviction. We also note that on February 4, 1991, Zackson and Lagatta entered into a joint defense agreement whereby they agreed to share information concerning their respective cases. In accordance with earlier rulings in this Circuit, *see LeRoy*, 687 F.2d at 618; *United States v. Stewart*, 513 F.2d 957, 960 (2d Cir.1975), we believe that Zackson had sufficient access to the essential facts enabling him to take advantage of any exculpatory material that may have been available, including Agent Alleva's testimony at the July 16th hearing on Lagatta's motion to dismiss. In our view, therefore, the government did not suppress the subject information in violation of *Brady*.

## II. *Ineffective Assistance of Counsel*

Zackson claims that the actions of Michael Washor, who represented him during pretrial proceedings until he was replaced by Robert Ellis, denied him effective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court announced that in order to demonstrate a constitutional deprivation of effective assistance of counsel, a defendant must show both unreasonable representation by the attorney and sufficient prejudice resulting therefrom. *Id.* at 687, 104 S.Ct. at 2064. The first prong of the *Strickland* test requires that a defendant prove "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. The Court noted that "[r]epresentation of a criminal defendant entails certain basic duties." *Id.* The attorney owes the defendant a duty of loyalty requiring avoidance of conflicts of interest, and the attorney should also "consult with the defendant on important decisions and ... keep the defendant informed of important developments in the course of the prosecution." *Id.* This Court, however, must consider all relevant circumstances in determining whether counsel's representation was objectively reasonable. *Id.*

■ Zackson's assertion that Washor's representation fell below the applicable standard of reasonableness is based on Washor's decision to oppose the trial judge's suggestion on January 17, 1991 that the marijuana and cocaine charges be severed. Although, at the time, the government was willing to accept a severance, Washor insisted that there was a factual and a legal nexus between the charges and that they should be tried together. In a letter to the district judge dated January 23, 1991, Washor argued that "Zackson's defenses [were] inexpli-

cably [sic] interwoven with the defendant Lagatta and that unless they [were] presented at a joint trial of *all Counts* defendant Zackson [would] be extremely prejudiced." (emphasis in original).

Washor later explained his reasons for opposing the severance in an affidavit dated November 19, 1991. Fully crediting the averments in the affidavit would lead us to conclude that Washor appears to have committed at least two ethical violations. Washor stated that he made the decision to oppose the severance without consulting Zackson. Moreover, Washor's decision appears to have been motivated primarily by self-interest. For example, he acknowledged that he opposed the severance because his involvement with another client in another trial placed him under "enormous time constraints" causing him concern about his ability to represent Zackson in two separate trials. He also expressed concern that separate trials would place "unnecessary financial burdens" on Zackson.

The Code of Professional Responsibility instructs that a lawyer should exercise his professional judgment solely for the benefit of the client. *See* Code of Professional Responsibility EC 5–1, N.Y.Jud.Law App. (1990) (the "Code"). An attorney's loyalty to a client should not be diluted by either personal interests or the interests of another client. *Id.* Additionally, Disciplinary Rule 5–105 dictates that a lawyer "not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client...." Code of Professional Responsibility DR 5–105(B), N.Y.Jud.Law App. (1990). If a severance would indeed have benefitted Zackson, Washor may have violated this standard by allowing his time commitment to another client to influence his judgment concerning Zackson's case.

Washor was also required by professional ethics to inform Zackson of the decision to oppose the severance and of the potential consequences of that decision. Ethical Consideration ("EC") 7–7 of the Code dictates that "authority to make decisions is exclusively that of the client," and EC 7–8 states that "[a] lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations." *See* Code of Professional Responsibility EC 7–7, 7–8, N.Y.Jud.Law App. (1990). Washor appears to have disregarded his ethical obligations if indeed he failed to discuss this matter with Zackson.

Although Zackson has arguably satisfied the first prong of the *Strickland* test in showing that Washor's representation fell below an objective standard of reasonableness under prevailing professional norms, we are constrained to reject his claim of ineffective assistance of counsel because he has not demonstrated that he suffered sufficient prejudice from Washor's conduct. The second prong of the *Strickland* test requires that a defendant prove that counsel's errors actually prejudiced the defense, unless the attorney's actions fall within a narrow class of cases in which prejudice is presumed. *Strickland*, 466 U.S. at 692–93, 104 S.Ct. at 2067–68. The *Strickland* Court highlighted two instances when prejudice is presumed. The first is "[a]ctual or constructive denial of the assistance of counsel altogether." *Id.* at 692, 104 S.Ct. at 2067. The second, warranting "a similar, though more limited, presumption of prejudice," is "when counsel is burdened by an actual conflict of interest" that adversely affects his performance. *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345–50, 100 S.Ct. 1708, 1716–19, 64 L.Ed.2d 333 (1980)).

■ This Court has previously recognized two limited circumstances warranting *per se* treatment under *Strickland*. Specifically, when, at the time of trial, an attorney (1) is not duly licensed to practice law, or (2) is implicated in the defendant's crimes, the defendant has suffered a *per se* denial of the sixth amendment right to counsel. *See Bellamy v. Cogdell*, 974 F.2d 302, 306 (2d Cir. 1992) (in banc), *cert. denied*, — U.S. —, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993); *see also United States v. Fulton*, 5 F.3d 605, 612 (2d Cir.1993) (counsel implicated in defendant's crimes); *United States v. Cancilla*, 725 F.2d 867, 871 (2d Cir.1984) (same); *Soli-*

*na v. United States,* 709 F.2d 160, 167 (2d Cir.1983) (counsel not a member of any bar). Zackson does not claim that Washor's conduct falls under either of these two limited circumstances. He does argue, however, that his case falls under the second category of presumptive prejudice outlined in *Strickland*—a conflict of interest adversely affecting performance—because Washor was "plagued by a conflict of interest, namely that he 'was under enormous time constraints in regard to prior trial commitments....' "

■ Zackson argues that Washor's "time constraints" were the kind of conflict of interest meant to be encompassed by our *per se* rule. We disagree. We recognize that the conflict of interest rationale is one of two bases for our narrow rule. *See Bellamy,* 974 F.2d at 306–07. In *Bellamy,* we noted that "notions of conflict of interest ... appl[y] in cases both where the lawyer is not duly licensed, and where the lawyer is implicated in the crimes of his or her client." *Id.* at 307 (citations omitted). The rule, however, is narrowly applied to those rare circumstances where counsel's conduct is so likely to impede a vigorous defense that a fact-specific inquiry into prejudice becomes wasteful and impractical. *Id.* at 308. The application of the *per se* rule is not warranted unless the specific conduct at issue will almost invariably render counsel's representation deficient. For example, an attorney's involvement in his or her client's crimes presents a "type of conflict for a lawyer, which is always real, not simply possible, and which, by its nature, is so threatening as to justify a presumption that the adequacy of representation was affected." *Cancilla,* 725 F.2d at 870.

When analyzed under this Circuit's *per se* rule, we are compelled to reject Zackson's claim of *per se* ineffective assistance of counsel. The conduct herein engendering the ineffective assistance claim was Washor's representation of Zackson while under "enormous time constraints in regard to prior trial commitments." In order to classify this kind of conflict as a *per se* sixth amendment violation, we would have to conclude that virtually all busy defense attorneys, who may consider limitations on their own time when scheduling matters before the courts, or who have more than one client and schedule matters based on clients' needs, are inherently incapable of providing an adequate defense that would satisfy the requirements of the sixth amendment. That, we are not prepared to do. Since Zackson has failed to prove *per se* ineffective assistance by Washor, we must direct our inquiry to whether he has proved actual prejudice due to Washor's conduct.

To establish prejudice, Zackson must prove that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. "When a defendant challenges a conviction [based on a claim of ineffective assistance of counsel], the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.,* 466 U.S. at 695, 104 S.Ct. at 2068.

■ Zackson claims that but for Washor's errors, there is a reasonable probability that he would not have been convicted on the cocaine charges. He attributes the claimed prejudice to Washor's opposition to the court's suggestion that the marijuana and cocaine charges be severed. Zackson contends that the substantial evidence against him in relation to the marijuana charge improperly influenced the jury to find him guilty of the cocaine charges, with respect to which the evidence was much less compelling. He argues that evidence of the marijuana charge would not have been admitted at a separate trial on the cocaine charges, thus preventing the allegedly prejudicial "spillover effect."

■ We are not persuaded by Zackson's reasoning with respect to this issue. Rule 404(b) of the Federal Rules of Evidence provides for the admissibility of evidence of other crimes, wrongs, or acts for a variety of purposes. This Circuit's approach to the rule is inclusionary, allowing evidence to be admitted for any legitimate purpose other than to show a defendant's criminal propensity. *See United States v. Pitre,* 960 F.2d 1112, 1118–19 (2d Cir.1992) (quoting *United States v. Roldan–Zapata,* 916 F.2d 795, 804

(2d Cir.1990), *cert. denied,* 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991)). Thus, evidence of the long-standing marijuana conspiracy might well have been admissible, *inter alia,* to provide details concerning the background of the case or to show a prior relationship between the co-conspirators. *See United States v. Brennan,* 798 F.2d 581, 589 (2d Cir.1986); *United States v. Harris,* 733 F.2d 994, 1006 (2d Cir.1984). We are satisfied that it is likely that evidence of both conspiracies would have been admissible under Rule 404(b) in a separate trial of either one, and we note also that the jury was properly instructed to consider the evidence with respect to each charge against Zackson separately. We conclude that Zackson has failed to demonstrate substantial prejudice stemming from the trial judge's denial of his motion to sever the marijuana charge from the cocaine charges.

■ Zackson also claims prejudice based on his decision not to testify at trial. More specifically, he insists that, had there been separate trials, he would have testified on his own behalf regarding the cocaine charges, but the consolidation of the charges allegedly prevented this testimony. We have not been persuaded that there is a "reasonable probability" that the addition of the testimony of Zackson would have provided the jury with reasonable doubt as to his guilt, thereby preventing his conviction on the cocaine charges. In any event, we can only speculate as to whether Zackson would have testified on his own behalf. We are required to engage in even more speculation in order to determine the effect of such testimony on a jury. Although Zackson claims he would have protested his innocence and blamed Lagatta for the cocaine transaction, his testimony at Lagatta's trial on July 13, 1992 casts doubt on this claim. During his testimony at Lagatta's trial, Zackson repeatedly responded that he could not recall the events and circumstances surrounding the cocaine deal and whether Lagatta was involved in such a deal. In sum, it is our view that Zackson has not shown sufficient prejudice to demonstrate that Washor's conduct violated his right to effective assistance of counsel.

### III. *Denial of the Severance Motion*

Zackson claims that the district court's failure to sever Count One from Counts Two and Three of the superseding indictment was reversible error. He argues that a severance would have prevented the jury from improperly inferring guilt on the cocaine charges from the admittedly substantial evidence of guilt on the marijuana charge.

■ In a memorandum order decided July 26, 1991, Judge Nickerson denied Zackson's motion to sever the charges because he determined that Zackson failed to demonstrate "substantial prejudice" warranting a severance. *See United States v. Fantuzzi,* 463 F.2d 683, 687 (2d Cir.1972). We recently re-emphasized the principle that the decision whether to grant a severance is "committed to the sound discretion of the trial court and is 'virtually unreviewable.'" *United States v. Harwood,* 998 F.2d 91, 95 (2d Cir.1993) (quoting *United States v. Lasanta,* 978 F.2d 1300, 1306 (2d Cir.1992)). We will not reverse a trial judge's ruling denying a motion to sever unless the trial judge "clearly abused his discretion" and the defendant has suffered substantial prejudice therefrom. *United States v. Casamento,* 887 F.2d 1141, 1149–50 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). In *Casamento* we noted that this standard presents an "extremely difficult burden" for the defendant. *Id.* at 1149 (citations omitted). We are not convinced that Zackson has met this burden. We have already discussed and rejected Zackson's claim of ineffective assistance of counsel because we concluded that he could not demonstrate sufficient prejudice resulting from Washor's opposition to a severance of the subject counts. Similarly, we believe that Zackson has failed to demonstrate substantial prejudice resulting from the trial judge's denial of his severance motion given the likelihood that evidence of both crimes would be admissible in separate trials, and considering that the judge instructed the jury to weigh the evidence relating to each crime separately. We believe, therefore, that Judge Nickerson's denial of Zackson's severance motion was not an abuse of discretion.

## IV. *Downward Departure*

■ Zackson also argues that he should have received a downward departure from the applicable sentencing range under the Sentencing Guidelines. The minimum term of imprisonment within the range that was applicable to Zackson's offense level and criminal history category was 121 months, but Zackson's attorney requested a departure downward to 120 months. Zackson was sentenced to a prison term of 151 months, which was the maximum point within the applicable range. First, he claims that his help in obtaining Lagatta's release from the kidnappers entitled him to a downward departure under § 5K1.1. That section states in pertinent part:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

U.S. Sentencing Guidelines § 5K1.1.[2] Second, he argues that he was entitled to a downward departure based on diminished capacity under Guidelines § 5K2.13. For this claim, Zackson relies on a mental health screening report dated July 10, 1992 stating that he suffered from "below average cognitive functioning and symptoms of depression." Zackson also claims impairment resulting from a 1983 automobile accident.

■ Generally, a trial judge's refusal to depart from the applicable Guidelines range is not reviewable, *see United States v. Colon*, 884 F.2d 1550, 1552–53 (2d Cir.), *cert. denied*, 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989), unless the record reflects that the sentencing judge erroneously believed that he lacked authority to depart, *see United States v. Califano*, 978 F.2d 65 (2d Cir.1992) (per curiam). Nothing in the record indicates that Judge Nickerson held an errone-

ous view concerning his authority to depart. Zackson's challenge to the sentence based on denial of a departure is therefore not reviewable.

■ Zackson's claim that the sentence imposed constitutes an abuse of discretion, however, presents a different issue. It is difficult for this Court to adequately review this claim because the trial judge did not articulate his reasons for imposing the particular sentence, stating simply, "I have considered everything." Zackson's claim of abuse of discretion cannot be properly reviewed without some statement in the record which reveals the justification for the imposition of the particular sentence. Perhaps anticipating this difficulty, Congress imposed a requirement on sentencing judges to articulate reasons for imposing a sentence under the Guidelines. *See* 18 U.S.C. § 3553(c) (1988). Section 3553 states in pertinent part:

(c) **Statement of reasons for imposing a sentence.**—The court, at the time of sentencing, *shall* state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

(1) is of the kind, and within the range, described in subsection (a)(4) and that range exceeds 24 months, the reasons for imposing a sentence at a particular point within the range. . . .

18 U.S.C. § 3553(c)(1) (1988) (emphasis added).

Section 3553 specifies the factors that a sentencing judge must consider in determining the particular sentence to be imposed, and also requires an articulation of the reasons for imposing a sentence—as noted, if the sentence exceeds twenty-four months, as here, the reasons for choosing a particular point within the applicable range must be stated. *See* 18 U.S.C. § 3553(c)(1) (1988). Since Congress saw fit to mandate that there be such an articulation, we believe the impo-

---

**2.** Even without a motion by the government, the trial judge may have discretion to make such a downward departure. *See United States v. Agu*, 949 F.2d 63, 67 (2d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992). Zackson's claimed assistance, helping to save Lagatta's life, might place him within this narrow exception. *See United States v. Khan*, 920 F.2d 1100, 1107 (2d Cir.1990) ("Because rescuing confidential informants ... is not a grounds for departure taken into account by the Guidelines, the district court is empowered to consider it as a possible grounds for departure under § 5K2.0 notwithstanding the government's decision not to move for a departure under § 5K1.1"), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991).

sition of a sentence without an articulation of reasons, even one briefly stated, is a sentence imposed in violation of law unless and until supported by a statement of adequate reasons. Other circuits have shown an inclination toward a similar view, and have remanded when the sentencing judge failed to give the required articulation of reasons for imposing a sentence. *See Fields v. United States,* 963 F.2d 105, 109 (6th Cir.1992); *United States v. Veteto,* 920 F.2d 823, 826 (11th Cir.1991); *United States v. Upshaw,* 918 F.2d 789, 792–93 (9th Cir.1990), *cert. denied,* 499 U.S. 930, 111 S.Ct. 1335, 113 L.Ed.2d 266 (1991). *Cf. United States v. Dumorney,* 949 F.2d 997, 998 (8th Cir.1991) (affirming sentence but discussing importance of § 3553(c)(1) requirement). We therefore conclude that Zackson's sentence is appealable under 18 U.S.C. § 3742(a), which permits an appeal for a sentence imposed in violation of law.

We have, in the past, emphasized the importance of the § 3553(c)(1) requirement. *See United States v. Chartier,* 933 F.2d 111, 117 (2d Cir.1991). In *Chartier,* we vacated the defendant's sentence where the district judge did not "fully comply with the requirement of section 3553(c)(1)," although the record contained some discussion of the judge's reasoning. *Id.* Herein, the record contains no discussion of the reasons for imposing the particular sentence chosen by the district judge. Therefore, the sentence must be vacated unless the district court provides a statement of reasons in compliance with § 3553(c)(1). This panel will retain jurisdiction in the event of a subsequent appeal.

We have reviewed Zackson's other claims and consider them to be without merit.

## CONCLUSION

For the foregoing reasons, the judgment of conviction is affirmed, and the matter is remanded for an adequate statement of reasons.