89 F.3d 826
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Dominic MONTEMARANO, Petitioner-Appellant,
v.
UNITED STATES of America, Appellee.
 No. 95-2314.
 United States Court of Appeals, Second Circuit.
 Dec. 1, 1995.
 
 1
 Appearing for Petitioner-Appellant:Barry M. Fallick, Fallick & Sternheim, New York, N.Y.
 
 
 2
 Appearing for Appellee: Hector Gonzalez, Assistant U.S. Attorney, S.D.N.Y., New York, N.Y.
 
 
 3
 Before CARDAMONE and CALABRESI, Circuit Judges, and NICKERSON, District Judge, sitting by designation.
 
 ORDER
 
 4
 This cause came to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 5
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 6
 Petitioner-Appellant Dominic Montemarano appeals from an order entered on April 10, 1995, in the United States District Court for the Southern District of New York (John F. Keenan, Judge ), dismissing his petition to vacate his conviction pursuant to 28 U.S.C. § 2255.
 
 
 7
 In 1984, Montemarano was indicted with various other defendants on charges arising out of the activities of the Colombo organized crime family. According to the indictment, Montemarano was involved in a conspiracy to extort money from concrete-pouring contractors who sought to obtain "smaller" construction jobs, those worth $2 million or less. At Montemarano's 1987 jury trial, the Government introduced testimony from an extortion victim, Stanley Sternchos, who reported statements made to him by Montemarano's codefendant Ralph Scopo. According to Sternchos, Scopo had told him that the four major mafia families in New York allocated "larger" construction jobs (those worth $2 million or more) among six New York City construction firms, known collectively as the "Club," and generally prevented other firms, including Sternchos's, from bidding for "larger" jobs. The "smaller" jobs were controlled entirely by the Colombo crime family. During the trial, Scopo (joined by Montemarano) asked the district court to subpoena certain industry witnesses, including Pasquale J. Bruno and Frederick DeMatteis. Scopo proffered that those witnesses would "testify principally that there was no bidrigging in concrete-pouring contracts above the $2 million level and that Scopo had never extorted money from them." United States v. Scopo, 861 F.2d 339, 344-45 (2d Cir.1988), cert. denied, 490 U.S. 1022 (1989). Judge Keenan declined to issue the subpoenas. He determined that the proposed testimony of Bruno and DeMatteis concerned only the collateral issue of whether there existed a "Club" controlling contracts over $2 million, while the only extortion charges facing Montemarano and Scopo involved contracts under that figure.
 
 
 8
 Montemarano and Scopo were convicted on all counts submitted to the jury. Montemarano, in particular, was convicted of RICO conspiracy, a substantive RICO violation, conspiracy to extort money from concrete construction firms, specific instances of extorting concrete construction firms, soliciting bribes to a labor official, and offering and paying a bribe to a federal prison official. On October 14, 1987, Judge Keenan sentenced Montemarano to, among other things, 18 years in prison.
 
 
 9
 On appeal, Montemarano and Scopo argued that Judge Keenan erred in declining to subpoena Bruno and DeMatteis. This court rejected their arguments, holding instead that "the trial court's view that the proposed testimony of Scopo's industry witnesses was directed to a collateral matter was entirely sound." Scopo, 861 F.2d at 346. As we explained:
 
 
 10
 The charges here focused solely on concrete-pouring contracts worth $2 million or less.
 
 
 11
 ....
 
 
 12
 ... [T]he thrust of the testimony of Scopo's proposed witnesses would have been that in fact there was no Club, no rigging of bids above the $2 million level, and no payoffs above that level. The government's use, however, of Scopo's statements as to the existence of the Club and the extreme penalty for nonpayment to the crime families did not depend on the truth of those statements. Scopo used his statements to control the actions of the firms from which he extorted money and to instill fear of violence in his extortion victims. Thus, for the present case, the important fact regarding the Club was not whether or not it actually existed or how it worked but only whether Scopo made the statements. Even if Scopo's proposed witnesses could have cast doubts on the veracity of Scopo's statements, they could not have cast doubt that the statements were made.
 
 
 13
 In sum, ... [n]one of the proposed testimony would have contradicted the charges in the present indictment; it would not have dealt with contracts of $2 million or less; and it would not have addressed the crucial fact that Scopo made the statements. Accordingly, we reject Scopo's challenge to the trial court's refusal to issue subpoenas for his proposed industry witnesses.
 
 
 14
 Id. at 345-46. We affirmed both defendants' convictions.
 
 
 15
 On March 24, 1994, Montemarano filed the present § 2255 petition to vacate his conviction on the ground that the Government had violated its constitutional obligation, under Brady v. Maryland, 373 U.S. 83 (1963), to disclose that Pasquale J. Bruno and Frederick DeMatteis might be sources of potentially exculpatory evidence. The Government's disclosure obligation, Montemarano argued, stemmed from its knowledge that both Bruno and DeMatteis had testified before a federal grand jury that they had never heard of the "Club" that supposedly controlled the larger concrete-pouring jobs in New York. The district court rejected Montemarano's argument and dismissed the petition in a memorandum opinion and order dated April 5, 1995. This appeal followed.
 
 
 16
 In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87; United States v. Zackson, 6 F.3d 911, 917 (2d Cir.1993). We agree with the district court that no Brady violation occurred here, because Montemarano has failed to make either of the two required showings: that the prosecution "suppressed" evidence and that the evidence in question was "material."
 
 
 17
 This Court has held that "[a]s a threshold matter, the defendant must show that the Government actually suppressed evidence." United States v. Esposito, 834 F.2d 272, 275 (2d Cir.1987). Evidence, even if material and exculpatory, is not "suppressed," and thus no Brady violation occurs, " 'if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.' " Zackson, 6 F.3d at 918 (quoting United States v. LeRoy, 687 F.2d 610, 618 (2d Cir.1982), cert. denied, 459 U.S. 1174 (1983) (citations omitted)). The record supports Judge Keenan's finding that Montemarano was "fully aware" of the purportedly exculpatory testimony available from Bruno and DeMatteis. At trial, Montemarano joined co-defendant Scopo's request to subpoena Bruno and DeMatteis, and was present when Scopo explained that those witnesses would deny knowledge of any bidrigging scheme for concrete-pouring contracts exceeding $2 million. Not only did Montemarano know that Bruno and DeMatteis existed; he knew exactly what testimony they could have given and in fact sought to obtain that evidence at trial. The Government was therefore not required to disclose those witnesses' grand jury testimony to Montemarano, since he was already "on notice of the essential facts which would enable him to call the witness[es] and thus take advantage of any exculpatory testimony that [they] might furnish." United States v. Stewart, 513 F.2d 957, 960 (2d Cir.1975).
 
 
 18
 Montemarano's claim has a second defect: this Court has already held that the testimony of Bruno and DeMatteis was immaterial to the charges brought against him in this case. On direct appeal from his conviction, we concluded that the testimony, which denied the existence of a "Club" controlling concrete-pouring jobs that were worth more than $2 million, was irrelevant to the charges actually brought against Montemarano, since those involved only contracts worth less than $2 million. Scopo, 861 F.2d at 345. Furthermore, we indicated that any testimony as to the non-existence of the "Club" would in no way have detracted from the evidence that Scopo had in fact represented to his extortion victims that the "Club" existed and would mete out harsh penalties to anyone who refused to pay the kickbacks. Id. Because we have, in effect, already held that the testimony supposedly available from Bruno and DeMatteis would not have been "exculpatory," Montemarano's arguments to the contrary are foreclosed by the law of the case.
 
 
 19
 The district court's dismissal of the petition is therefore affirmed.