24-2080-cr
*United States v. Colello*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-five.

PRESENT:
> AMALYA L. KEARSE,
> RICHARD C. WESLEY,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

―――――――――――――――――――――――――――――――

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                      24-2080-cr

CHARLES SAYEGH, AKA CHARLIE,

> *Defendant,*

MICHAEL COLELLO, AKA MIKE GREENE, AKA STAN GREENE,

*Defendant-Appellant.*

FOR DEFENDANT-APPELLANT:　　　　　DANIEL L. STEIN (Christopher Hall, *on the brief*), Weil, Gotshal & Manges LLP, New York, NY.

FOR APPELLEE:　　　　　THOMAS JOHN WRIGHT (Benjamin M. Burkett, Michael D. Maimin, and Brandon C. Thompson, *on the brief*), Assistant United States Attorneys, *for* Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from an August 2, 2024 judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

Defendant-Appellant Michael Colello ("Colello") appeals from a judgment of conviction after a jury found him guilty of conspiracy to commit wire fraud and aggravated identity theft. Colello, posing alternatively as "Mike Greene" and "Stan Greene," and his co-conspirators offered to assist Petron Energy, Inc. ("Petron") and its chief executive officer, Floyd Smith ("Smith"), in obtaining capital by procuring surety bonds and letters of credit from financial institutions. Petron, an oil and gas company, intended to use the surety bonds and letters of credit to finance an expansion of its operations. Taken in the light most favorable to the government, the evidence at trial

showed, *inter alia*, that Colello and his co-conspirators provided two fraudulent surety bonds and two fraudulent standby letters of credit to Petron, for which Petron paid Colello and his co-conspirators approximately $1.9 million. The vast majority of that sum was intended to reimburse the financial institutions from whom Colello and his co-conspirators purportedly obtained the collateral—surety bonds and letters of credit—provided to Petron. There were no such bonds or letters of credit from the financial institutions; Colello and his co-conspirators divided the money amongst themselves.

After his conviction, Colello moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing only that the government suppressed exculpatory materials in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court denied Colello's motion.

On appeal, Colello (1) renews his *Brady* challenge; (2) argues that his aggravated identity theft conviction was not supported by sufficient evidence; and (3) alleges that his trial counsel was constitutionally deficient. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## DISCUSSION

### I.  Sufficiency of the Evidence

"[B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'"  *Johnson v. United*

3

*States*, 520 U.S. 461, 466–67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "'[I]t is enough that an error be "plain" at the time of appellate consideration' for '[t]he second part of the [four-part] *Olano* test [to be] satisfied.'" *Henderson v. United States*, 568 U.S. 266, 279 (2013) (quoting *Johnson*, 520 U.S. at 468 (which was quoting *Olano*, 507 U.S. at 732 (other internal quotation marks omitted))).  And "[i]f all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson*, 520 U.S. at 467 (quoting *Olano*, 507 U.S. at 732 (other internal quotation marks omitted)).  Colello says that the evidence at trial was insufficient to establish (1) that he knowingly used another individual's identity, and (2) that the use of another individual's identity was central to the fraud scheme at issue.  Based on the record, we disagree and see no error.

The aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1), provides that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."[1]  A "means of identification" includes an individual's name.  18 U.S.C. § 1028(d)(7)(A).  After Colello was convicted, the Supreme Court ruled that § 1028A is violated only where "the defendant's misuse of

---

[1] Wire fraud conspiracy is a predicate offense for aggravated identity theft.  *See* 18 U.S.C. § 1028A(c)(5).

another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature" of the offense. *Dubin v. United States*, 599 U.S. 110, 114 (2023).

Ample evidence supported the jury's finding that Colello knowingly used other individuals' identities without their authorization to create fraudulent surety bonds and letters of credit. For example, the second fraudulent surety bond was supposedly signed by "Mike Haffar." The second fraudulent letter of credit was supposedly signed by "Madelaine Licayan." Mike Haffar and Madelaine Licayan testified at trial that the signatures on those documents were not theirs. Mike Haffar testified that he had never heard of Petron, Colello, or any of Colello's aliases. Yet when Smith questioned whether the signatory of the first surety bond was legitimate, Colello sent Smith a link showing that Mike Haffar was a licensed insurance broker in California and introduced Smith to a "Mike Haffar" during a conference call.

Similarly, Madelaine Licayan did not possess the authority to endorse letters of credit on behalf of JPMorgan Chase Bank, but Colello told a potential lender that Madelaine Licayan should be their point of contact when that lender sought to collect and verify the authenticity of the second letter of credit. And although Colello asserts that there was insufficient evidence that he *knowingly* used the identities of Mike Haffar and Madelaine Licayan to fraudulently obtain money from Petron, there was evidence that Colello not only used Licayan's name, but also gave the lender a false address for Licayan,

5

one that had been used on some documents but was in fact the address of a parking garage. In short, the evidence admitted at trial was ample to permit the jury to infer that Colello's use of those identities was knowingly false. It was therefore not error, much less plain error, not to disturb the jury's verdict based on its permissible inferences that Colello knowingly and unlawfully used other individuals' identities to enable his fraud.

Nor does *Dubin* require reversal. After Colello presented Petron with the first fraudulent surety bond, one of Petron's investors expressed concern that the signatory of that bond did not come up in searches of registered insurance brokers. To placate this concern, Colello provided Smith with a new surety bond signed by "Mike Haffar." Consequently, Colello's unauthorized use of Mike Haffar's signature to reassure Petron's investors was "at the locus of the criminal undertaking" and a "but-for cause of its success." *United States v. Omotayo*, 132 F.4th 181, 194 (2d Cir. 2025) (quoting *Dubin*, 599 U.S. at 123, 131). Overwhelming evidence supports the jury's finding that Colello engaged in a scheme to defraud and commit aggravated identity theft.

## II. *Brady* Violation

Colello argues that the government violated its *Brady* obligation by not revealing (1) an unrelated guilty plea of one of Colello's co-conspirators, Tommy Watts ("Watts"), to charges arising from a separate surety bond fraud scheme in the Central District of California; and (2) an unrelated civil lawsuit filed against Smith, Petron, and other defendants alleging fraud related to surety bonds. Colello argues that this evidence could

have been used to impeach Smith's credibility and to show that Colello did not knowingly defraud Petron. We review the denial of a motion for a new trial for abuse of discretion. *See United States v. Forbes*, 790 F.3d 403, 406 (2d Cir. 2015).

Neither Watts's guilty plea nor the civil complaint against Smith was favorable to Colello or material to his guilt, as required to give rise to a *Brady* violation. As the district court aptly noted, the fact that Watts, who was not called as a witness, pleaded guilty to fraud charges entirely unrelated to this case is not exculpatory in any material respect. Watts never spoke to Smith without Colello or co-conspirator Charles Sayegh present, and he was nothing more than a "minor player in the Petron conspiracy." Special App'x at 4. Similarly, allegations of fraud made in an unrelated civil complaint that names Smith, among others, as a defendant are too untethered to the instant matter to be exculpatory or material under *Brady*. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Moreover, the information at issue was publicly available, and as such, not suppressed by the government. *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) ("Evidence is not suppressed if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." (internal quotation marks omitted)). Watts's indictment was publicized by the United States Attorney's Office for the Central District of California prior to Colello's trial. Likewise, the allegations arising from the civil suit filed were a matter of public record. *See id.; see also United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("Documents that are part of

7

public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation.").

Finally, as noted above, given the overwhelming evidence supporting his conviction, Colello has failed to establish prejudice from the nondisclosures. *See United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (stating that suppressed evidence is only prejudicial "where there is a reasonable probability that the government's suppression affected the outcome of the case").

## III. Ineffective Assistance

Colello's direct appeal primarily focuses on claims of ineffective assistance by his trial counsel. However, we have a "baseline aversion to resolving ineffectiveness claims on direct review," particularly where there is a claim that is not fully developed in the trial record. *United States v. Yauri*, 559 F.3d 130, 132 (2d Cir. 2009) (internal quotation marks omitted).

Colello, represented by new counsel on appeal, claims that he received ineffective assistance from his trial counsel. We conclude that the record is not sufficiently developed for the resolution of his ineffective assistance claim. On the present record, it is not clear when Colello's trial counsel became aware of Watts's guilty plea or whether trial counsel was aware of the civil suit prior to or during trial,[2] and, if he was aware,

---

[2] In a letter to the district court, Colello informed the court that it was his trial counsel who "first alerted [him] as to the issue of the *Brady* violation" pertaining to Watts. *See United States v. Colello*, 20-cr-613, Dkt. No. 103 at 1 (S.D.N.Y. Feb. 28, 2024).

8

whether the decision not to use that information was a strategic one.  Colello may pursue

his ineffective assistance claim via "[a] collateral proceeding under 18 U.S.C. § 2255."  *Id.*

at 133; *see also United States v. Doe*, 365 F.3d 150, 152, 154 (2d Cir.), *cert. denied*, 543 U.S. 975

(2004).

*      *      *

We have considered Colello's remaining arguments and conclude they are without

merit.  For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court