**UNITED STATES of America, Appellee,**

v.

**Paul CHARTIER, Defendant–Appellant.**

**No. 289, Docket 90–1288.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1991.

Decided May 3, 1991.

Ian Lowell Heller, New York City (John H. Jacobs, New York City, on the brief), for defendant-appellant.

David C. James, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty.,

Matthew E. Fishbein, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before FEINBERG, NEWMAN and McLAUGHLIN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal raises important issues concerning the "career offender" guideline issued by the Sentencing Commission. U.S.S.G. § 4B1.1. The guideline specifies significantly enhanced guideline ranges for certain offenders with two prior felony convictions for offenses involving violence or narcotics. Paul C. Chartier appeals from the May 1, 1990, judgment of the District Court for the Eastern District of New York (Arthur D. Spatt, Judge) convicting him, on his plea of guilty, of armed bank robbery, in violation of 18 U.S.C. § 2113(d) (1988), and sentencing him to imprisonment for 21 years and ten months. Had the career offender guideline not applied, the applicable guideline range would have been 70 to 87 months. The career offender guideline thus increased his sentence by at least 14½ years. We conclude that factual matters pertinent to application of the career offender guideline remain to be resolved, and we therefore vacate the sentence and remand for resentencing.

## Facts

For twenty years, Chartier has been a drug addict. In December 1988, displaying a toy gun, he robbed a Staten Island branch of the Chase Manhattan Bank and took approximately $12,000. Ultimately he was arrested and pled guilty to a violation of 18 U.S.C. § 2113(d). The disputed issue at sentencing was whether Chartier should be sentenced under the career offender guideline, U.S.S.G. § 4B1.1. Chartier's prior record included four 1974 robberies, which are crimes of violence for purposes of the career offender guideline. See U.S.S.G. § 4B1.2(1); U.S.S.G. § 4B1.2, comment. (n. 2). Three robberies occurred in Nassau County, New York; two involved banks, one involved a fast-food outlet. The New York bank robberies occurred on November 9 and November 29. Between the New York robberies, Chartier also committed a bank robbery in Massachusetts on November 25, 1974.

The three New York robberies were prosecuted by state authorities and consolidated for sentencing. Chartier received an aggregate term of 7½ to 15 years. The federal government prosecuted the Massachusetts robbery. Pursuant to a plea agreement, Chartier received a sentence of 14 years, concurrent with his New York sentence.

Under the Sentencing Guidelines, Chartier's offense level for the instant offense, increased for use of a dangerous weapon and for the amount of money taken, and reduced for acceptance of responsibility, was 20. Chartier's prior record placed him in Criminal History Category VI, for which the sentencing range, at level 20, is 70 to 87 months. Absent the prior record, in Criminal History Category I, his sentencing range would have been 33 to 41 months. His prior record, without regard to the career offender guideline, thus more than doubled his maximum guideline range, increasing it by 46 months, or nearly four years.

The Government contended, and the District Court agreed, that the career offender guideline was applicable to Chartier, since he had at least two prior convictions for crimes of violence. The Court rejected Chartier's contention that the four prior robberies should be aggregated and deemed a single conviction for purposes of the career offender guideline. For Chartier's offense, the career offender guideline prescribes a sentencing range of 210 to 262 months. The District Judge selected a sentence at the top of this range and sentenced Chartier to 262 months' imprisonment (21 years, 10 months). The career offender enhancement thus increased his sentence by 14 years and 7 months above the top of the range that would have applied if the career offender guideline had not been applied to his prior record.

## Discussion

Congress instructed the Sentencing Commission to frame a guideline of significant

severity for a category of "career offenders." For such offenders the guideline is to "specify a sentence to a term of imprisonment at or near the maximum term authorized." 28 U.S.C. § 994(h) (1988).[1] The criteria for designation as a career offender are that the defendant (1) is at least 18 years old, (2) has been convicted of a crime of violence or certain narcotics offenses, and (3) has previously been convicted of two felony offenses that are either crimes of violence or certain narcotics offenses. *Id.*

Responding to this instruction, the Sentencing Commission promulgated the "career offender" guideline, U.S.S.G. § 4B1.1. It establishes a schedule of enhanced offense levels, scaled to the statutory maximum penalty for the offense of conviction. For example, for offenses carrying a maximum penalty of 25 years (as does Chartier's offense of armed bank robbery), the offense level is 34. The guideline also specifies that in all cases Criminal History Category VI shall apply. The guideline implements section 994(h) by defining a career offender as a defendant (1) who was at least 18 years old at the time of the instant offense, (2) whose instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) who has at least "two prior felony convictions of either a crime of violence or a controlled substance offense."

Two issues concerning application of the career offender guideline are presented by this appeal. The first concerns the requisite sequence of prior offenses. The second concerns the requisite separateness of the prior offenses.

A. *Sequence of offenses.* On its face, the career offender guideline displays an ambiguity concerning the requisite sequence of events. Under the broadest reading, the guideline would apply to a defendant who has been convicted of two qualifying offenses at any time prior to sentencing for the instant offense. That would include a defendant who commits three crimes of violence, is subsequently arrested, is subsequently convicted, and appears for sentencing for the third offense with the two prior convictions on his record. Under the narrowest reading, the guideline would apply only to a defendant whose offenses and convictions are sequential, *i.e.,* he commits the first qualifying offense and is arrested and convicted, he thereafter commits the second qualifying offense and is arrested and convicted, and he thereafter commits the third qualifying offense and is arrested and convicted. Under a middle-ground reading, the guideline would apply only to a defendant who has been *convicted* of two qualifying offenses prior to *commission* of the instant qualifying offense.

All three readings reach only defendants who have committed at least three qualifying offenses, but with a significant difference. The broad reading reaches the defendant who has had no opportunity to "learn his lesson," *i.e.,* he has not been convicted prior to the commission of any of his three offenses. The narrow reading reaches the defendant who has had two opportunities to "learn his lesson," *i.e.,* he committed his second offense after his conviction for his first offense, and he committed his third offense (the instant offense) after his conviction for his second offense. The middle-ground reading reaches the defendant who has had at least one opportunity to "learn his lesson," *i.e.,* he committed his third offense (the instant offense) after his convictions for the two prior offenses, but no conviction intervened between his first and second offenses.

The Sentencing Commission chose the middle-ground approach. It defined the phrase "two prior felony convictions" in the third criterion of the career offender guideline to mean that "the defendant committed the instant offense subsequent to

---

1. The "maximum term authorized" for most provisions of the federal criminal code, including 18 U.S.C. § 2113(d), under which Chartier was sentenced, was established at a time when federal sentences were subject to parole, normally available at the one-third point of a sentence. Under the Sentencing Reform Act of 1984, however, parole is eliminated. As a result a sentence at or near the "maximum term authorized" now means a considerably longer period of time served than normally would have been the case prior to the abolition of parole.

sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.2(3)(A). If applied literally, this definition covers Chartier. He committed the instant offense after at least two convictions for crimes of violence—in his case, after convictions for the three New York state robbery offenses and the Massachusetts federal robbery offense.

Chartier contends that we should interpret the career offender guideline in the narrowest manner, requiring a sequence of offense/conviction/offense/conviction/offense. The Government urges a literal reading of sections 4B1.1 and 4B1.2(3)(A) to reach what we have called the middle-ground approach—two convictions preceding the instant offense, but without a first conviction preceding the second offense. That issue appears not to have previously arisen in this Circuit. In our only prior encounter with the career offender guideline, the defendant's two prior convictions were four years apart, suggesting that the first conviction preceded the second offense. *United States v. Richardson*, 923 F.2d 13 (2d Cir.1991). The precise issue of sequence appears not to have been explicitly raised or considered in other circuits, although several courts have upheld application of the career offender guideline where the first conviction did not precede the second offense. *See United States v. Wildes*, 910 F.2d 1484 (7th Cir.1990); *United States v. Jones*, 898 F.2d 1461 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990); *United States v. Flores*, 875 F.2d 1110 (5th Cir.1989).

A similar problem has arisen under the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (1988) ("ACCA"). The ACCA establishes an enhanced minimum penalty of 15 years' imprisonment for a person who (a) violates 18 U.S.C. § 922(g)(1) (1988), prohibiting receipt or possession of firearms by felons and other designated classes of persons, and (b) "has three previous convictions ... for a violent felony or a serious drug offense ... committed on occasions different from one another." Our Circuit has recently decided not to require the sequential approach in determining qualifying convictions under the ACCA. *United States v. Mitchell*, 932 F.2d 1027 (2d Cir.1991). Several Circuits agree with this view. *See United States v. Schieman*, 894 F.2d 909 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990); *United States v. Schoolcraft*, 879 F.2d 64 (3d Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989); [2] *United States v. Herbert*, 860 F.2d 620 (5th Cir.1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989); *United States v. Wicks*, 833 F.2d 192 (9th Cir.1987), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). Other Circuits have given implicit support to this view by upholding application of the ACCA on evidence of at least three prior convictions occurring in different criminal episodes, regardless of the dates of the convictions. *See United States v. Bolton*, 905 F.2d 319, 323 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991); *United States v. Pedigo*, 879 F.2d 1315, 1316–19 (6th Cir.1989); *United States v. Rush*, 840 F.2d 580, 581–82 (8th Cir.1988); *United States v. Greene*, 810 F.2d 999, 1000 (11th Cir.1986).

■ In construing the career offender guideline, our initial task is to determine what the Commission intended. We are satisfied that the Commission deliberately framed the definition of qualifying offenses to require, as far as sequence is concerned, only that the two qualifying convictions precede the instant offense; there is no requirement that a conviction for the first offense precede the second offense. The Commission's awareness of its choice is demonstrated by its further provision that the definition of qualifying offenses for purposes of the career offend-

---

**2.** Prior to *Schoolcraft*, the Third Circuit in banc had divided evenly on the issue. *See United States v. Balascsak*, 873 F.2d 673 (3d Cir.1989) (in banc). Six members required a sequence of three prior convictions each separated by inter-

vening offenses, *id.* at 674, 678–84 (opinion of Gibbons, C.J.); six members required only that the three prior convictions precede the firearms offense, *id.* at 684, 685 (opinions of Becker and Greenberg, JJ.).

er guideline includes the definition of "related cases," set forth in section 4A1.2 for purposes of computing criminal history scores. Offenses could not be "related" if the second offense was not committed until after conviction on the first offense.

Furthermore, we see no basis for believing that in adopting the career offender guideline and defining its terms without requiring the sequential approach, the Commission has acted contrary to what Congress authorized in enacting 28 U.S.C. § 994(h). Section 994(h) was added to the Sentencing Reform Act of 1984 in place of a bill previously passed by the Senate, S. 2572, 97th Cong., 2d Sess. (1982), which would have mandated sentences at or near the statutory maximum for certain repeat offenders. Instead of requiring such sentences, Congress decided to leave the specifics of sentence enhancement to the Sentencing Commission. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 175, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3358. Certainly Congress did not require the sequential approach to penalty enhancement, as some state legislatures have done. *See, e.g.*, N.Y.Penal L. § 70.10(1)(c) (McKinney 1987) (under New York persistent felony offender law, two or more convictions for crimes committed prior to sentence for any one of them are deemed one conviction). Even if some of those who supported Section 994(h) might have envisioned enhancement only for an offender whose offenses follow his convictions in sequence, we believe that the Commission had authority to promulgate a career offender guideline without that requirement. The offender who commits a third offense after *twice* not "learning his lesson" from prior convictions may well be more deserving of enhanced punishment than the offender who has only once not "learned his lesson" (though committing two prior offenses resulting in two convictions), but the Commission has discretion to apply the career offender guideline to both offenders.

B. *Separateness of the Offenses.* Appellant contends that, even if convictions need not intervene between his prior offenses, his prior offenses do not satisfy the career offender guideline because they are insufficiently distinct from each other. That claim raises two issues—first, whether the prior offenses should be considered as a single group because they might have been consolidated for sentencing had they all occurred in one jurisdiction, and second, whether the offenses were committed as part of a common scheme or plan.

The definition of the term "two prior felony convictions" in the career offender guideline specifies as a requirement that "the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of Part A of this Chapter." U.S.S.G. § 4B1.2(3)(B). Part A of Chapter Four sets forth the criteria for considering prior sentences to be separate for purposes of aggregating points to determine the offender's criminal history category, the horizontal axis of the sentencing table. Part A states, "Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." *Id.* § 4A1.2(a)(2). The Commentary states, "Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." *Id.* § 4A1.2, comment. (n. 3).

Chartier's three prior New York robberies were consolidated for sentencing, and the Government concedes that these robberies are to be treated as one prior case for purposes of the career offender guideline. However, the Government relies on the federal conviction in Massachusetts as the second prior crime of violence. Chartier contends that the Massachusetts offense should be grouped with the three New York offenses. He points out that the Massachusetts offense occurred in between the dates of the New York offenses, it occurred in a state that borders New York, all four offenses were committed within an interval of three weeks, all four were committed for the purpose of supporting his drug addiction, and, as a result of plea negotiations, the sentence on the Massachusetts robbery was no longer than and concurrent with the sentence for the three New York robberies.

Chartier contends that the commentary's inclusion of consolidated cases within the category of "related cases" is only illustrative of what constitutes a related case and that his four prior offenses should be considered "related" for purposes of section 4A1.2(a)(2), even though not consolidated. Alternatively, he argues that inquiry should be made as to whether the cases would have been consolidated had they occurred within the purview of a single prosecuting jurisdiction, and he suggests that with any concurrent sentences, a presumption should arise that consolidation would have occurred if a single prosecution jurisdiction had been involved. He finds support in *United States v. Rivers*, 733 F.Supp. 1003 (D.Md.1990), *sentence vacated*, 929 F.2d 136 (4th Cir.1991), where concurrent sentences imposed for two robberies occurring within 12 days, one in Baltimore City and one in surrounding Baltimore County, were considered to be "the functional equivalent of a consolidation" and treated as one sentence for purposes of the career offender guideline. "It was only an accident of geography," the Court observed, "that precluded ... consolidation." *Id.* at 1004. However, *Rivers* has been rejected by the Fourth Circuit, 929 F.2d 136 (4th Cir.1991), and its generous view of "related cases" has been rebuffed by the Fifth Circuit, *see United States v. Flores*, 875 F.2d 1110, 1113–14 (5th Cir. 1989) (six concurrent sentences imposed by three different judges not aggregated for purposes of career offender guideline).

■ Even if a situation might arise that is the "functional equivalent" of consolidation, we agree with *Flores* that the fact of concurrent sentences cannot always render sentences "related" for purposes of the career offender guideline. And we do not agree with Chartier that concurrent sentences can give rise to a presumption that consolidation would have occurred if one jurisdiction had prosecuted all the offenses. Indeed, we think the inquiry into whether consolidation would have occurred is too speculative to be an ingredient of a guideline system that should promote certainty of results. The fact that Massachusetts shares a border with New York (at a considerable distance from the locale of Chartier's New York offenses) is not sufficient to render these four concurrent sentences the functional equivalent of a consolidation. Had federal prosecution not occurred for the Massachusetts offense, that robbery would have been left for Massachusetts authorities, and we see no basis to view offenses occurring in different states as candidates for a functional equivalent of consolidation.[3]

■ Chartier's further argument that his four offenses satisfy the commentary's criterion of offenses that were part of a common scheme or plan is more substantial. All four offenses were committed within a short period of time, in similar fashion, and for the same purpose of supporting Chartier's addiction. The circumstances would have supported a finding of common scheme or plan, had one been made. Unfortunately, there is no finding one way or the other on the point, an omission doubtless attributable to the failure of Chartier's trial counsel to advance this precise contention in the trial court. Though some complaints about guidelines application are waived if not timely asserted, *see, e.g., United States v. Arigbodi*, 924 F.2d 462, 464 (2d Cir.1991) (question of whether District Court inappropriately relied on certain convictions in calculating defendant's criminal history score), we think Chartier should have a further opportunity to obtain a finding on an issue on which turns an increment of 15 years of imprisonment. *See United States v. McCall*, 915 F.2d 811, 814 (2d Cir.1990). Accordingly, we will vacate the sentence and remand for a finding as to whether the four prior offenses were "part of a single common scheme or plan" for purposes of applying the career offender guideline.

---

**3.** We note that the Ninth Circuit denies the Commission's authority to deem cases that are consolidated for sentencing to be "related" for purposes of the career offender guideline. *See*

*United States v. Gross*, 897 F.2d 414, 417 (9th Cir.1990) ("We reject that part of Application Note 3 that suggests that cases consolidated for sentencing are to be deemed related.").

If, upon reconsideration, the District Judge makes a finding that renders Chartier subject to the career offender guideline, we urge the Judge to give renewed consideration to the selection of the particular sentence to be imposed within the guideline range. Congress has required a sentencing court to state, in addition to "the reasons for its imposition of the particular sentence," "the reason for imposing a sentence at a particular point within the range" whenever the range exceeds 24 months. 18 U.S.C. § 3553(c)(1) (1988). This requirement applied to Chartier's sentencing because his guideline range was 210 to 262 months, a span of more than four years. In endeavoring to comply with this requirement, the District Judge noted Chartier's prior record and observed that since a prior sentence of 15 years had not dissuaded him from a subsequent offense, a sentence at the bottom of the guideline range (17½ years) seemed insufficient.

Two aspects of that observation are troubling. First, the prior 15–year sentence was subject to parole; Chartier in fact served about nine years. By contrast, whatever sentence is imposed under the guidelines will be "flat time," not subject to parole. Thus, the more relevant basis for comparison, in assessing how severe a sentence to select, should be the amount of time served on the prior sentence. A sentence of 17½ years of flat time would not be an insubstantial sentence, even for an offender who had previously served nine years. Second, though the Judge offered some explanation as to why he did not sentence at the bottom of the guideline range, he did not fully comply with the requirement of section 3553(c)(1) by stating why he selected the "particular point" (in this case, the maximum) within the guideline range. Though a sentencing judge retains discretion in these matters, he must demonstrate that he has thoughtfully discharged his statutory obligation, with a degree of care appropriate to the severity of the punishment ultimately selected.

Sentence vacated, and case remanded.