UNITED STATES of America, Appellee,

v.

Andres REYES, Defendant–Appellant.

No. 758, Docket 96–1295.

United States Court of Appeals, Second Circuit.

Submitted Dec. 12, 1996.

Decided June 20, 1997.

Donald T. Kinsella, Assistant U.S. Attorney, Albany, NY (Thomas J. Maroney, United States Attorney, Northern District of New York, Albany, NY, of counsel), for Appellee.

Lee Greenstein, Albany, NY, for Defendant–Appellant.

* Hon. Leonard D. Wexler, Senior Judge, United States District Court for the Eastern District of New York, sitting by designation.

Before: CARDAMONE and PARKER, Circuit Judges, and WEXLER,* District Judge.

CARDAMONE, Circuit Judge:

Andres Reyes appeals from his sentence imposed on April 30, 1996 in the United States District Court for the Northern District of New York (McAvoy, J.), after he plead guilty to one count of conspiracy to distribute and to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendant's chief complaint on appeal is not that the sentence itself was in error, but that the sentencing court failed to comply with all the requirements of a federal statute governing the manner in which a criminal sentence ought to be announced.

A number of interests must be served at sentencing: the defendant, to whom a sentence of confinement is a severe punishment, is entitled to know if and for how long he is to be confined, and why he has been given a particular sentence; the public needs to learn that the defendant is being punished for the crime he committed; the appellate court, which reviews the record, must assure itself that the sentencing law was carefully followed. To serve these interests, the defendant must be brought before the sentencing court to be told publicly what his sentence is and the reasons for it; moreover, the sentence must fully reflect not only the district court's careful evaluation of all the circumstances of the crime, but also reflect its discharge of its statutory obligation according to both the spirit and the letter of the sentencing law. This appeal questions whether each of those interests was adequately served in this case.

## BACKGROUND

In June 1995 a confidential informant told Drug Enforcement Administration (DEA) agents that Andres Reyes was selling cocaine base in the cities of Albany and Troy in upstate New York. At the agents' request,

the informant paged defendant on August 29, 1995 to arrange a controlled drug purchase from him later that day in front of a restaurant on Washington Avenue in Albany. When the informant and an undercover DEA agent arrived at the designated location, Reyes and his girlfriend, Melissa Rodriguez, climbed into the back seat of the informant's car. Rodriguez then handed several plastic bags to Reyes, who gave them to the informant in exchange for $900 in cash.

Two weeks later, on September 14, 1995, the informant and the DEA agent again called defendant and arranged a second crack cocaine buy at the same location as the August 29 transaction. A few minutes after the agent and the informant parked on Washington Avenue, Reyes drove past the area with an unidentified passenger in the front seat of his car. After stopping at the corner to let his passenger out, defendant parked behind the informant's car. Defendant entered the back seat of the informant's car, as he had before, but then told the informant he had to make a telephone call, exited the vehicle, and walked away. When Reyes left, the passenger who had been in Reyes' car got into the informant's car and sold the agent and the informant one ounce of crack cocaine for $900. A few minutes later, Reyes returned and said he was leaving because he had seen someone in the area taking pictures.

Defendant and Melissa Rodriguez were arrested three weeks later, on October 2, 1995, as they were leaving their apartment in Troy. After they consented to a search of their apartment, officers discovered a variety of drug-related paraphernalia, including a laboratory scale, cocaine cutting agents, two beepers, and a handgun. Five small bags of cocaine base were found in Rodriguez' purse. Defendant was subsequently indicted on one count of conspiracy to distribute and possession with intent to distribute cocaine base, two counts of distribution of cocaine base, and three counts of possession with intent to distribute cocaine base. Several months later, he plead guilty, as earlier noted, to the conspiracy charge pursuant to a plea agreement.

As part of the agreement, Reyes acknowledged he would be subject to a minimum sentence of ten years and a maximum sentence of life imprisonment. The government estimated that defendant's base offense level would be 32 and that he would receive a three point downward adjustment for acceptance of responsibility. Reyes reserved the right to appeal a sentence of more that 87 months. In its presentence report (PSR) the Probation Office recommended upward adjustments pursuant to Sentencing Guidelines § 2D1.2(a)(2), which enhances by one level the base offense level of a defendant who involves a minor in a drug offense, and § 2D1.1(b)(1), which provides for a two level enhancement for possession of a dangerous weapon in connection with certain narcotics offenses.

In preparing the PSR, the Probation Office discovered that Reyes had a criminal record in Massachusetts, where he had been convicted of assault and battery with a dangerous weapon and two drug offenses. The prior convictions qualified Reyes as a career offender pursuant to Guidelines § 4B1.1, under which certain types of repeat offenders are subject to a mandatory minimum base offense level and a criminal history category of VI. Applying § 4B1.1, the Probation Office recommended a base offense level of 37. The PSR also adopted the three-level downward adjustment for acceptance of responsibility suggested in the plea agreement, resulting in a total recommended offense level of 34.

The sentencing court concluded that defendant's total offense level was 34, based on a career offender offense level of 37 adjusted downward three points for acceptance of responsibility. It then granted the government's motion for a downward departure, pursuant to Guidelines § 5K1.1, in recognition of Reyes' "substantial assistance" to the government. The § 5K1.1 departure reduced Reyes' total offense level to 25, with the resulting sentencing range, under a criminal history category of VI, of 110–137 months. Reyes was sentenced to 121 months imprisonment, five years of supervised release, and a $50 special assessment.

## DISCUSSION

### I  Statement of Reasons at Sentencing

#### A.  *Purpose of 18 U.S.C. § 3553(c)(1)*

■ We turn first to those requirements governing the manner in which a sentence upon a defendant is to be announced. In sentencing a criminal defendant, a federal court is required to state in open court its reasons for imposing a particular sentence. 18 U.S.C. § 3553(c)(1) (1994). If the sentence is "of the kind, and within the range, [established under the Sentencing Guidelines] and that range exceeds 24 months," the court must also articulate why it selected a sentence at a specific point within the applicable range. *Id.* When the sentencing court fails to offer an adequate explanation for selecting a particular point within the sentencing range, the sentence will be vacated and the matter remanded for resentencing. *See United States v. Zackson,* 6 F.3d 911, 923–24 (2d Cir.1993); *United States v. Chartier,* 933 F.2d 111, 117 (2d Cir.1991).

The § 3553 statement of reasons requirement was one of a number of amendments to Title 18 included in the Comprehensive Crime Control Act of 1984. In a Senate report discussing the effects of those amendments, Congress explained that the statement of reasons is intended to serve a number of purposes. First, it advises the defendant of the reasons for the imposition of a particular sentence, which gives the defendant an opportunity to challenge any perceived error in the judge's reasoning prior to the formal entry of judgment. Second, it is a prerequisite to meaningful appellate review of the sentence's reasonableness. *Cf. United States v. Lawal,* 17 F.3d 560, 563 (2d Cir.1994) ("The dominant purpose of a statement of reasons is to assist appellate review"). Third, the statement of reasons may both educate the public and serve a deterrent function by informing the public why the defendant received a particular sentence and what consequences other citizens might expect to incur should they engage in similar criminal activities. Fourth, it provides valuable information to criminal justice researchers and the Sentencing Commission regarding the effectiveness of the Guidelines in achieving their stated aims. *See* S.Rep. No. 98–225, at 80 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3263; *Lawal,* 17 F.3d at 564.

■ Consistent with its informational function, the statement of reasons provision of § 3553 has been interpreted to require the sentencing judge to articulate a reason that demonstrates that he "thoughtfully discharged his statutory obligation, with a degree of care appropriate to the severity of the punishment ultimately selected." *Chartier,* 933 F.2d at 117; *United States v. Rosa,* 11 F.3d 315, 344 (2d Cir.1993). It is not enough for a sentencing court simply to say that it has considered "everything," *Zackson,* 6 F.3d at 923, or to explain why it is not sentencing a defendant at the bottom of the range without also explaining why it is sentencing at the top of that range, *see Chartier,* 933 F.2d at 117 (suggesting in dicta that § 3553(c)(1) was not satisfied where the court merely "noted [defendant's] prior record and observed that since a prior sentence of 15 years had not dissuaded him from a subsequent offense, a sentence at the bottom of the guideline range (17½ years) seemed insufficient").

Instead, a sentencing court complies with § 3553(c)(1) only when it includes in its statement of reasons some particularized discussion of those factors distinctive to the defendant that influenced the court's decision. Such factors may include, for example, the defendant's criminal history, the nature and severity of the offense, or the likelihood of recidivism. *Cf. United States v. Lopez,* 937 F.2d 716, 728–29 (2d Cir.1991) (selecting sentence within Guidelines range, court took into account defendant's attempt to mislead by providing false information to probation and defendant's role in the offense); *United States v. Rivera,* 971 F.2d 876, 894–95 (2d Cir.1992) (§ 3553(c)(1) satisfied by reference to defendant's violent criminal history and likelihood of committing future crimes).

#### B.  *Application of § 3553(c)(1) in Instant Case*

Appellant contends that the district court failed to offer any explanation for imposing a sentence of 121 months imprisonment, a term

of imprisonment in the middle of the 110–137 month range deemed applicable to him. In response, the government points out that at the sentencing hearing the court addressed defendant saying that although his Guidelines range was 110 to 137 months, he would be committed for a term of 121 months because of the substantial assistance he provided to the government. The sentencing court gave a more complete statement of its reasons in a written judgment form filed three days after sentencing. In the judgment form the sentencing court explained:

[T]he Court sentenced the defendant near the middle of the range, and, not at the top, even though the Court enhanced [Reyes'] sentence because of the weapon in defendant's apartment, [because] there was no use of weapons or violence associated with his conduct in this case. Defendant was sentenced above the minimum because the Court believes there is a strong possibility that he will return to criminal conduct and the public should be protected in that connection.

The government urges that for purposes of satisfying § 3553(c)(1) we consider the sentencing court's oral and written rationales together in support of the sentence it imposed.

In its written statement of reasons, the district court indicated it had engaged in precisely the type of reasoned deliberation required by § 3553(c)(1) and by our decision in *Chartier.* Having determined the appropriate sentencing range, it considered the defendant's possession of a weapon, the absence of violence, the likelihood of recidivism, and the need to protect the public. Had these factors and the weight accorded them been discussed by the court in its oral statement of reasons at the sentencing hearing, Reyes would now have no cause for complaint.

### C. *Statement of Reasons Must be Orally Given To Defendant in Open Court*

■ The language of § 3553(c)(1) and the underlying purposes of that statutory provision nonetheless compel us to conclude that review of the sentencing court's statement of reasons must be limited to the oral statement

made to the defendant at the sentencing hearing.

■ Our conclusion with respect to the obligations required pursuant to § 3553(c)(1) is informed by ordinary principles of statutory construction. Foremost among those principles is that elementary canon of statutory construction: "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). When the language of a statute is unambiguous, the first canon is also the last, as the judicial inquiry ends when the ordinary meaning of Congress' words is clear. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992) (collecting cases).

Section 3553(c)(1) directs the sentencing court at the time of sentencing to state in open court its reasons for imposing the sentence. Although "at the time of sentencing" might arguably encompass a sentencing judge's formal, written sentencing order that ordinarily comes later, the phrase "state in open court" cannot reasonably be interpreted to include written statements recorded *after* the sentencing hearing. The use of the words "open court" unequivocally demonstrates Congress' purpose to have the sentencing court orally deliver its rationale to the defendant. Nothing in the record before us suggests that the written judgment form was read to the defendant in open court. Hence, regardless of its contents, it cannot satisfy the mandate of § 3553.

We recognize, of course, that this strict interpretation of statutory language is open to criticism as elevating form over substance, particularly when applied to a case like this one, where the district court's written statement of reasons plainly satisfies the statute. We do not think such criticism would be justified, however. While the unambiguous language of § 3553 alone mandates our holding, the result dictated by that language promotes not only the underlying purposes of

the statute but also some of the values inherent in our criminal justice system. The most critical interest served by an oral statement of reasons given in open court is the defendant's interest in knowing why he was given a particular sentence. Only if this interest were characterized as purely informational could it be adequately served by a later-submitted written statement. Just as a defendant has the right to confront the witnesses against him and to be present at proceedings that decide his guilt or innocence, Congress has determined that he is also entitled to hear in person from the sentencing judge whether and how long he will be deprived of his liberty, and more specifically why he is being given this particular sentence.

In addition, an oral statement of reasons at sentencing gives defendant an opportunity to challenge the sentencing rationale before the sentence becomes fixed in the judgment of conviction. If the post-sentencing written statement is allowed to substitute for an oral statement, defendant will be able to challenge the reasoning only through appellate review, which is conducted under the deferential abuse of discretion standard. Thus, the burden on appeal of a defendant so placed will almost always be more onerous than that of the defendant who hears the court's justification prior to final entry of the judgment when he may yet persuade the court to consider additional factors or an alternative sentencing rationale.

Finally, although there is no reason to believe that the reasons offered in this case were pretextual, there is obviously an inconsistency between the reasons offered at the sentencing hearing and those included in the sentencing court's written judgment. At the sentencing hearing, the only factor referred to as affecting the length of his sentence was Reyes' substantial assistance to the government. In its written statement the district court mentioned appellant's possession of a weapon, the nonviolent nature of the crime, and the likelihood that Reyes would commit additional offenses. The inclusion of reasons not stated at sentencing and the exclusion of the one rationale that was mentioned at the hearing leave the defendant and this Court to speculate on which factors actually motivated the sentencing decision. This discrepancy illustrates the potential danger of allowing a *post hoc* written statement of reasons for the sentence to control over a contemporaneous oral statement delivered to defendant at the time sentence is imposed.

As urged by the government, we could ignore the contradiction between the two statements and consider all of the reasons offered by the court, regardless of when and in what form they were presented to the defendant. One of the drawbacks of such an approach is the variance that may, and did here, appear between the two statements. Further, an oral statement of reasons permits defense counsel and government counsel to call attention to errors in the sentencing analysis. Moreover, as sentencing courts are expected to fulfill their obligation to engage in a reasoned analysis of the factors peculiar to the defendant before settling on a particular sentence, it can hardly be a substantial burden to require the factors taken into account to be stated at the same time the sentence is announced.

■ Having determined that only an oral statement of reasons may satisfy § 3553's requirements, we turn now to the district court's oral statement at the sentencing hearing. The only reason given for sentencing Reyes at a particular point in the Guidelines range was his "substantial assistance provided to the government." This statement, offered to justify a sentence in the middle of the range, implies that in the absence of such assistance the court would have sentenced at the top of the range, or at least higher in the range than 121 months. As our holding in *Chartier* suggests, this type of presumption of the maximum sentence is impermissible.

■ A sentencing court's obligation under § 3553 is to explain why it is imposing a particular term of imprisonment, not why it is not imposing an alternative sentence. Because the district court's oral statement of reasons inadequately addresses those aspects of appellant's conduct and the circumstances that influenced its choice of a 121 month term of imprisonment, the sentence must be vacated and the matter remanded for resentencing.

## II Upward Adjustment for Possession of a Weapon

■ Reyes further maintains that the sentencing court erred ·in applying Guidelines § 2D1.1(b)(1) to enhance his offense level. That section provides for a two-level enhancement where a defendant possesses a dangerous weapon during commission of a narcotics offense. In determining the applicability of specific offense characteristic provisions such as § 2D1.1 the initial inquiry is whether the conduct at issue is relevant to the offense. *United States v. Pellegrini,* 929 F.2d 55, 56 (2d Cir.1991) (per curiam). With respect to offenses involving "aggregate harms," such as drug offenses, relevant conduct includes all "acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. Sentencing Guidelines § 1B1.3(a)(2). .

Appellant contends the government presented no evidence from which it could reasonably be concluded either that the gun found in his apartment in Troy was related to his participation in the two Albany drug transactions or that he had used his home in furtherance of any drug activity. Although the drug-related paraphernalia seized from Reyes' apartment, together with the crack cocaine found in Rodriguez's purse at the time of the arrest, might well support a finding that the apartment was used in connection with Reyes' participation in the cocaine transactions, we need not address the merits of this argument because the record and the PSR indicate that the sentencing court did not actually rely on the application of § 2D1.1(b)(1) in its ultimate determination of the appropriate sentencing range.

In the PSR, under the heading "Offense Level Computation," the Probation Office first itemized the Guidelines calculation that would be applicable to appellant were he not a career offender, beginning with a base offense level of 33. The base offense level reflected Guidelines § 2D1.1, which calls for a base offense level of 32 for drug offenses involving between 50 and 150 grams of cocaine base, and a one point upward adjustment under § 2D1.2(a)(2) for the involvement of Rodriguez, a minor. In the next numbered paragraph, labeled "Special Offense Characteristic," the PSR added the two level weapon possession enhancement challenged by appellant for an "Adjusted Offense Level (Subtotal)" of 35.

The Probation Office then considered the effect of the Guidelines' ·career offender provision, § 4B1.1, on Reyes' sentence. Under § 4B1.1, a career criminal is subject to a criminal history category of VI and a mandatory minimum offense level. The mandatory minimum offense level for a particular crime depends on the maximum term of imprisonment statutorily authorized for that crime. Conspiracy to possess and distribute cocaine base, the crime to which Reyes plead guilty, carries a statutory maximum sentence of life imprisonment. Under § 4B1.1, Reyes was therefore subject to a minimum offense level of 37. The Guidelines calculation in the PSR reflected the application of this career offender provision as a "Chapter Four Enhancement." The report also recommended that the court grant the three-level downward departure for acceptance of responsibility recommended in the plea agreement, for a total offense level of 34.

The district court adopted the factual findings and sentencing recommendations of the PSR, stating that it agreed with the probation officer that defendant's base offense level was 33 and his total offense level 34, with a sentencing range from 262 to 327 months. This statement reflects acceptance by the court of the Probation Office's sentencing calculation in its entirety. As the PSR indicates, and as § 4B1.1 requires, the Probation Office arrived at a total offense level of 34 by comparing the mandatory minimum offense level required under § 4B1.1 with the offense level that would otherwise apply. Although the weapon possession enhancement challenged by appellant raised the latter from 33 to 35, § 4B1.1 mandated a minimum offense level of 37, which supplanted the ordinary Guidelines calculation. Had the court declined to impose the enhancement, the result would have been no ·different. In short, because § 4B1.1 would have raised appellant's offense level to 37 regardless of whether the weapon possession adjustment was or was

**74**

not applied, the propriety of the adjustment is moot.

### CONCLUSION

For the foregoing reasons, we affirm in part, and remand for further proceedings consistent with this opinion.