156 F.3d 447
 UNITED STATES of America, Appellee,
v.
Vyron U. HARGRETT, aka Sealed Defendant # 1; Andre V.
Williams, aka Sealed Defendant # 10; and Roger
Mattison, aka Sealed Defendant # 14,
Defendants-Appellants,
Derrick D. Hargrett, aka Sealed Defendant # 2; Shondale L.
Mable, aka Sealed Defendant # 3; Vernon W. Youngblood, Jr.,
aka Sealed Defendant # 4; Iris M. Stevens, aka Sealed
Defendant # 5; Miles David Smith, aka Sealed Defendant # 6;
David McKinney, aka Sealed Defendant # 7; Richard A.
Brown, aka Sealed Defendant # 8; William Sanders, aka
Sealed Defendant # 9; Alvin Branch, aka Sealed Defendant #
11; Alonzo Lewis, aka Sealed Defendant # 12; John Paul
Pennisi, aka Sealed Defendant # 13 and Timothy Lewis, Defendants.
 Docket Nos. 97-1205, 97-1277, 97-1287.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 25, 1998.
Decided Sept. 29, 1998.
 
 Grant C. Jaquith, Assistant United States Attorney for the Northern District of New York, Syracuse, NY, (Thomas J. Maroney, United States Attorney for the Northern District of NY, of counsel), for Appellee.
 J. Scott Porter, Syracuse, NY, for Appellant, Vyron U. Hargrett.
 George F. Hildebrandt, Syracuse, NY, for Appellant, Andre V. Williams.
 Bruce R. Bryan, Syracuse, NY, for Appellant, Roger Mattison.
 Before: WINTER, Chief Judge, PARKER, Circuit Judge, and SCHWARZER, District Judge.*
 WINTER, Chief Judge:
 
 
 1
 Vyron Hargrett, Andre Williams, and Roger Mattison appeal from sentences imposed by Judge Munson after each pleaded guilty to various narcotics offenses. Hargrett and Williams received downward departures and now argue that the resultant sentences should be vacated because the district court failed to state reasons explaining, pursuant to 18 U.S.C. § 3553(c), the extent of the downward departure. Mattison, on the other hand, challenges the district court's determination of the quantity of crack cocaine for which he was held accountable, the failure to reduce his offense level for acceptance of responsibility, the characterization of his role as "minor," rather than "minimal," and the failure to reduce his offense level under the United States Sentencing Guidelines' (the "Guidelines") "safety valve" provision. We dismiss Hargrett's and Williams's appeals for lack of jurisdiction and affirm Mattison's sentence.
 
 A. Hargrett and Williams
 
 2
 Hargrett was charged with, inter alia, engaging in a continuing criminal enterprise in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, and possessing crack cocaine with intent to distribute. After entering into a plea agreement with the government, Hargrett pleaded guilty to engaging in a continuing criminal enterprise involving the distribution of cocaine and crack cocaine in violation of 21 U.S.C. § 848. Hargrett acknowledged that he had participated in the distribution of at least 1.5 kilograms of crack cocaine and, consequently, was subject to a statutory minimum sentence of life imprisonment. However, the government moved pursuant to Guidelines § 5K1.1 for a downward departure because of Hargrett's substantial assistance to the government. The court granted this motion, departed downwardly from the appropriate Guidelines range, and sentenced Hargrett to 216 months' imprisonment. However, it did not explain how it determined the extent of the departure.
 
 
 3
 Williams was charged with, inter alia, engaging in a continuing criminal enterprise, conspiracy to distribute cocaine and crack cocaine, and possessing cocaine with intent to distribute. Pursuant to a plea agreement, Williams pleaded guilty to the conspiracy charge, which, after his acceptance of responsibility and role as a minor participant were taken into account, yielded a sentencing range of 108 to 135 months' imprisonment. The district court, however, downwardly departed, again after granting a government motion under Section 5K1.1, and sentenced Williams to 57 months' imprisonment. Once more, the court did not explain why it departed to this extent.
 
 
 4
 Williams and Hargrett appeal on the ground that the district court failed to explain adequately the extent of the downward departure from the Guidelines, as required by 18 U.S.C. § 3553(c).
 
 
 5
 Section 3553(c) provides in pertinent part:
 
 
 6
 The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--
 
 
 7
 (1) is of the kind, and within the range [established by the Sentencing Guidelines], and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or
 
 
 8
 (2) is not of the kind, or is outside the range, [established by the Sentencing Guidelines], the specific reason for the imposition of a sentence different from that described.
 
 
 9
 18 U.S.C. § 3553(c)(1),(2). Hargrett and Williams rely principally upon our decision in United States v. Reyes, 116 F.3d 67 (2d Cir.1997), where we vacated a sentence based on the claim that, even when a district court departs downwardly from the Guidelines, it must indicate why it has imposed a particular sentence. See id. at 72. However, United States v. Lawal, 17 F.3d 560 (2d Cir.1994), held that because we lack jurisdiction to review a defendant's challenge to the extent of a downward departure, we similarly lack jurisdiction to entertain a challenge to the district court's explanation of the extent of that departure, absent evidence that the district court misunderstood its authority to depart. See id. at 563-64.
 
 
 10
 Reyes and Lawal are thus inconsistent. Both involved downward departures under Guidelines § 5K1.1, and both involved colorable claims that the sentencing judge had not sufficiently explained the extent of the departures. Reyes held that the sentence should be vacated and remanded for resentencing. Lawal held that we lacked jurisdiction to entertain the claim.
 
 
 11
 We hold that Lawal is the law of this circuit. In Reyes, the government never raised the jurisdictional issue, and we are confident that the Reyes panel, one member of which serves on this panel, would have dismissed the appeal had the issue come to its attention.[1] As we explained in Lawal, the statute which governs the appeal of criminal sentences, 18 U.S.C. § 3742, generally gives us jurisdiction to review the imposition of a downward departure only when raised on appeal by the government. See 18 U.S.C. § 3742(b)(3). On an appeal by the defendant, by contrast, we may only review: (i) the imposition of an upward departure; (ii) a sentence imposed in violation of law; (iii) a sentence imposed as a result of an incorrect application of the sentencing guidelines; or (iv) in the case of an offense for which there is no applicable guideline, a sentence that is plainly unreasonable. See 18 U.S.C. § 3742(a). Section 3742(a) does not generally confer jurisdiction on courts of appeals to review a district court's refusal to grant a downward departure or the extent of any downward departure that is granted. See United States v. Moe, 65 F.3d 245, 251 (2d Cir.1995); United States v. Doe, 996 F.2d 606, 607 (2d Cir.1993) (per curiam).
 
 
 12
 For the reasons stated in Lawal, we believe that a simple failure to explain the extent of a downward departure is, without more,[2] unreviewable on an appeal by a defendant. See Lawal, 17 F.3d at 563 ("[T]o interpret the phrase in 'violation of law' as permitting a defendant to appeal from a downward departure simply because the district court fails to state reasons therefor, would impermissibly erode the jurisdictional limitation contained in § 3742(a)(3)...."). A legal structure that prohibits review of the extent of a downward departure while permitting review of the failure to explain that extent would not only be anomalous but also lead to appeals that could not have a practical effect on the appellants' sentences. We have circulated this opinion to the active judges of this court. See Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir.1991).
 
 B. Mattison
 
 13
 Mattison was sentenced to 120 months' imprisonment after he pleaded guilty to conspiracy to possess crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). In determining this sentence, the district court found Mattison accountable for the distribution of 50 to 150 grams of crack cocaine. In addition, the court found that Mattison was not eligible for a reduction in his offense level for acceptance of responsibility because he failed to notify the government of his intent to plead guilty, until the day before jury selection was scheduled to commence. See U.S.S.G. § 3E1.1(b)(2). The court also classified Mattison as a "minor" rather than "minimal" participant in the conspiracy. Finally, the court found that Mattison never gave the government a complete and truthful account of his criminal activities and was thus not eligible for a "safety valve" reduction pursuant to Sentencing Guidelines § 5C1.2(5).
 
 
 14
 The district court based its finding that Mattison is accountable for the distribution of over 50 grams of crack cocaine on tape recordings of drug transactions involving Mattison and on the testimony of Mattison's co-conspirators. Specifically, the government introduced at trial (of other defendants) recordings of Mattison's phone calls from January 5-8, 1996. When sentencing Mattison, Judge Munson observed that these phone conversations showed Mattison's participation in drug transactions with Hargrett and one David McKinney involving over 50 grams of crack cocaine. Moreover, Mattison's co-conspirators testified that these transactions involved primarily crack cocaine or powder cocaine that was cooked into crack for distribution.
 
 
 15
 Mattison argues that the district court erroneously determined the quantity of crack cocaine for which he is accountable by crediting the unreliable testimony of Mattison's co-conspirators and by counting transactions involving powder cocaine as involving crack cocaine. We disagree.
 
 
 16
 Because Mattison failed to object to the district court's determination of the quantity of cocaine for which he was held accountable, we will review the district court's calculation only for plain error. See United States v. Keppler, 2 F.3d 21, 23-24 (2d Cir.1993). There was no error. The district court did not consider facially unreliable testimonial evidence in determining the quantity of crack cocaine. See U.S.S.G. § 6A1.3(a); Townsend v. Burke, 334 U.S. 736, 740, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Although the testimony of Mattison's co-conspirators contained minor inconsistencies and lack of detail, it was not particularly vulnerable. Indeed, it was largely consistent with Mattison's own testimony and was substantiated by recorded phone conversations and phone and pager records. As a result, there were more than sufficient indicia of the reliability of this testimony. See U.S.S.G. § 6A1.3(a).
 
 
 17
 Nor can we say that the district court plainly erred in holding that the 50 grams for which Mattison was held responsible involved crack cocaine. In a single uncontroverted incident, Mattison's co-conspirator "cooked" two ounces of powder cocaine into crack for distribution. Tape recordings and testimony demonstrate that Mattison made the phone call to obtain this cocaine, saw his co-conspirator cook the powder into crack, and could reasonably foresee that this crack was intended for distribution. Therefore, he was properly held accountable for this crack cocaine. See United States v. Miller, 116 F.3d 641, 684 (2d Cir.1997). Moreover, a number of other transactions involving crack cocaine were substantiated by testimony and recordings of phone conversations involving Mattison and his co-conspirators. The district court could, therefore, easily have concluded that Mattison participated in transactions involving well over 50 grams of crack cocaine.
 
 
 18
 With respect to the lower court's failure to reduce Mattison's sentence under U.S.S.G. § 3E1.1(b)(2), Mattison would have qualified for this acceptance-of-responsibility reduction only if he had "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently". U.S.S.G. § 3E1.1(b)(2). Section 3E1.1(b)(2) does not mandate an automatic reduction in the offense level for those who plead guilty; instead, it allows a reduction for those who actually conserve prosecutorial resources. The district court denied Mattison this reduction because his guilty plea was entered a day before jury selection was to commence. In light of Mattison's tardy plea and the resources spent by the government in preparing for trial, the district court was well within its discretion in denying the reduction. See United States v. Patasnik, 89 F.3d 63, 73 (2d Cir.1996).
 
 
 19
 Mattison's remaining arguments are similarly unavailing. The evidence amply showed Mattison's role as a middleman in drug transactions, including a recorded phone conversation in which Mattison told a co-conspirator that he, Mattison, had just sold 14 grams of crack for the co-conspirator. We cannot say, therefore, that the district court erred when it characterized Mattison as a "minor" (rather than "minimal") participant in the conspiracy. See United States v. Colon, 884 F.2d 1550, 1551-52 (2d Cir.1989).
 
 
 20
 We also reject Mattison's argument that he should have received a safety valve reduction under 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2. To qualify for this reduction, Mattison had, inter alia, to disclose truthfully and fully all the information he had concerning his offense. See 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(5). Ample evidence demonstrates that Mattison did not disclose all the drug transactions in which he was involved. Indeed, he did not disclose his involvement in transactions where the government had actually recorded his participation.
 
 
 21
 We therefore dismiss Hargrett's and Williams's appeals and affirm Mattison's sentence.
 
 
 
 *
 The Honorable William W Schwarzer of the United States District Court for the Northern District of California, sitting by designation
 
 
 [1]
 One source of confusion may stem from the Reyes panel's exclusive reliance on Section 3553(c)(1) in finding that the district court's explanation of the departure was inadequate. Subsection (c)(1) applies to sentences within the range designated under the offense level determined to be applicable under the Guidelines. Subsection (c)(2) applies to sentences outside that range and is applicable to a downward departure that results from a government motion under Guidelines § 5K1.1 based on the defendant's "substantial assistance."
 In Reyes, the district court downwardly departed under Section 5K1.1, but, for analysis purposes, stated that the sentence would be within the mid-range designated for an offense level lower than that applicable under the Guidelines. This mode of analysis was not required by the Guidelines. A downward departure based on Section 5K1.1 does not require the district judge to pick a new offense level and a particular sentence within the range set for that level; rather, the court may simply pick a sentence of so many months without mention of an offense level. See, e.g., United States v. Campo, 140 F.3d 415, 419 (2d Cir.1998). Nevertheless, Reyes evaluated the lack of explanation for the departure under (c)(1), which, as noted, governs sentences within a range determined by the applicable offense level. In fact, however, there was no legally relevant offense level or Guidelines range in Reyes because the sentence involved a downward departure, and the reference to an offense level by the district court was for analysis purposes only. It is doubtful, therefore, that (c)(1), rather than (c)(2), applied in Reyes.
 
 
 [2]
 None of this is to say, of course, that we would lack jurisdiction to review a claim that the record or other evidence indicated that a downward departure was limited in size because of an impermissible consideration such as race. See United States v. Avellino, 136 F.3d 249, 260 (2d Cir.1998)