**UNITED STATES of America,**
**Appellee,**

v.

**Pan Liang XIN, also known as Ding Pa, also known as Ah Som,**
**Defendant–Appellant.**

**No. 00–1655.**

United States Court of Appeals,
Second Circuit.

Oct. 2, 2001.

Present JON O. NEWMAN, GUIDO CALABRESI, and ROBERT D. SACK, Circuit Judges.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.

Pan Liang Xin ("Appellant" or "Pan") appeals from a sentence of twenty-five years' incarceration, to be followed by five years of supervised release, and a $150 special assessment, imposed by the United States District Court for the Southern District of New York (Kevin Thomas Duffy, *J.*) following his guilty plea.

BACKGROUND

Pan was an active member, beginning in 1992, of a violent criminal gang named the Fukienese Flying Dragons (the "Flying Dragons") that is based in the Chinatown neighborhood in Manhattan. The Flying Dragons were involved in a variety of criminal activities, including heroin trafficking, the smuggling of aliens into the United States for fees, murder, extortion, rape, and robbery. The Flying Dragons were organized into a loosely pyramidal structure, in which several "crews" took orders from one boss, Lee Shou Pao, to whom they delivered a portion of their criminal proceeds. By the time Pan was arrested, in January 1996, he had become a crew captain.

Paul A. Goldberger, Goldberger & Dubin, New York, NY, for appellant.

Andrew C. Devore; Christine H. Chung, on the brief, Assistant United States Attorneys, for Mary Jo White, United States Attorney, Southern District of New York, for appellee.

On April 4, 1997, Pan pleaded guilty to all three counts of Information S25 95 Cr. 893(JES), pursuant to a cooperation agreement with the government signed on March 24, 1996.[1] In his factual allocution,

---

1. In the cooperation agreement, Pan promised to provide information about any matters if asked by the government, to testify at any court proceeding, and to disclose his own criminal activities. The parties agreed that the sentence imposed was within the sole discretion of the court.

Pan admitted to being a member of the Flying Dragons since 1992 and to participating in a "number of kidnappings, extortions and murders." With respect to count one, he admitted to seven acts in furtherance of the criminal enterprise, including conspiring to murder various individuals, kidnapping illegal aliens and holding them for ransom, participating in numerous robberies, and conspiring to distribute heroin. He admitted, specifically, that in August of 1992, he had gone to an apartment in Queens with three others and got into a gunfight during which he shot one of the people in the apartment—"I believe he died." Judge Sprizzo accepted Pan's guilty plea.

On September 11, 2000, Pan appeared for sentencing before Judge Duffy.[2] At no point did Pan object to the Guidelines range—life imprisonment—that the Probation Department determined applied to his offenses or to the Probation Department's request for a downward departure (which the Government had requested prior to sentencing, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)) based on his substantial assistance to the government. Pan did object to the extent of the downward departure recommended in the Presentence Report; Pan requested a sentence of 15 years of imprisonment but the Report suggested 25 years. In support of increased leniency, Pan argued that one of the crimes described in the report—namely the killing of Shi You Wang and Zheng Fay in a Queens apartment—had been mischaracterized. Pan claimed that his actions, which, as noted above, he had addressed in his allocution, were defensible because the victims were members of a rival gang and had shot at him, and he had only shot back. When pressed by the Court to explain his position, Pan's counsel maintained that he did not want to refute the plea allocution by arguing that Pan was not guilty of murder, but rather, that he wanted to put the murders "into perspective."

Judge Duffy declined Pan's request for the court to hear testimony on who fired first and stated that the issue was immaterial to Pan's sentence. In response to Pan's request for such testimony, Judge Duffy said: "[T]he facts also are that your client left one apartment ... left it apparently with his friends, and they were all carrying weapons, they went down to another party, and something happened there which caused people to start a shootout." Pan responded to this general description: "That's right your Honor." Pan continued, however, to express concern regarding the court's understanding of the event. And Judge Duffy responded: "Let us assume that we drop out the entire incident, all right?" When Pan continued to press the point that the other gang's members had escalated the violence, the court stated, "[s]kip from there, forget about that totally and completely, and now talk to me about whether or not the sexual assaults which were involved by this man were cruel and gratuitous." Judge Duffy then continued to question Pan in an effort to discern if he was "cruel," and addressed, *inter alia*, Pan's mindset in cutting off the finger of a hostage and then wearing it around his neck.

In sentencing Pan to twenty five years' imprisonment, Judge Duffy stated:

> "Of the entire group of people that I have been called upon to sentence in this particular case, none of them seemed to get some kind of psychic pleasure in

2. Judge Sprizzo was unavailable and referred the case to Judge Duffy, who presided over Pan's sentencing.

inflicting pain, save one—you. I don't understand it.

. . . .

Some of the things you did were really cruel, antisocial of the worst type.

Your attorney suggests that you get less than what the Probation Department has recommended. The government basically has taken no position other than to point out your cooperation. And that cooperation has been quite fulsome. But somehow—somehow the cruelty must be removed from society. It is basically for that reason that I feel compelled to impose the sentence as recommended by the Probation Department."

This appeal followed.

## DISCUSSION

Appellant alleges that there were disputed facts in the Probation Report pertaining to the deaths of Shi You Wang and Zheng Fay in a Queens apartment. Pan contends that the question of who shot first was "never resolved" and that this open issue, because of the brutal nature of the acts, was relevant to sentencing. Pan further maintains that it was "not sufficiently clear that the court disregarded [the disputed issue] for sentencing." According to Pan, "the court did not afford appellant an adequate opportunity to present information and improperly relied on disputed facts when sentencing appellant."[3] Pan claims that, in so doing, the district court violated Fed.R.Crim.P. Rule 32(c), U.S.S.G. § 6A1.3, and his due process rights.

Pan's appeal contests the extent to which the lower court chose downwardly to depart. Our precedents make clear that we lack jurisdiction to review a district court's refusal to grant a downward departure or the extent of any downward departure that is granted. *See United States v. Doe,* 996 F.2d 606, 607 (2d Cir.1993) (per curiam) ("[I]t is beyond question that we may not review a district court's discretionary determination not to grant a downward departure. It follows logically, then, that neither may we review, at defendant's request, the *extent* of any departure the court may grant" (emphasis in original) (citation omitted)); *United States v. Hargrett,* 156 F.3d 447, 450 (2d Cir.1998). The only exceptions to this rule are when the refusal to depart downward is based on an erroneous interpretation of law or a misapplication of the Sentencing Guidelines. *See, e.g., United States v. Moe,* 65 F.3d 245, 251 (2d Cir.1995).

Though Appellant does not make reference to the general unreviewability of downward departures, we assume that, by claiming a violation of the sentencing guidelines and the criminal procedure rules, Appellant is arguing that his case falls within one of these exceptions.

According to the Sentencing Guidelines:

(a) When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the Court regarding that factor. . . .

---

**3.** Pan correctly points out that it was within the discretion of the district court to hold a hearing to resolve the disputed issues of fact. He contends that the court's comments that "something happened" did not clarify the issue sufficiently. Pan claims that, because of the heinousness of murder, it is impossible to conclude that the court below did not rely, to some extent, on the disputed facts of the murder. He argues that Judge Duffy's comment in sentencing Pan that "it is basically for th[e] reason [of the cruelty of his actions that] I feel compelled to impose the sentence ..." provides evidence that other factors—namely the murders—played into his decision.

34

(b) The court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(c)(1), Fed.R.Crim.P.

U.S.S.G. § 6A1.3. Fed.R.Crim.P. 32(c)(1) states in relevant part: "For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Fed.R.Crim.P. 32(c)(1). As we have explained, the procedures set forth in Rule 32(c) help protect defendants' due process rights and help clarify the record for appeal. *United States v. Garcia*, 900 F.2d 571, 574 (2d Cir.1990).

█ Though the court has the power to hold a hearing to resolve the issue, it need not do so if it "disregard[s] the disputed material." *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1172 (2d Cir.1983); *United States v. Williamsburg Check Cashing Corp.*, 905 F.2d 25, 29 (2d Cir.1990). Moreover, when a district court elects to disregard a controverted matter, it need not "make a specific finding" that resolves the controversy. *United States v. Alvarado*, 891 F.2d 439, 445–46 (2d Cir. 1989), *vacated and remanded on other grounds*, 497 U.S. 543, 110 S.Ct. 2995, 111 L.Ed.2d 439 (1990).

█ In determining Pan's sentence, it is clear that the lower court disregarded the only fact in dispute, namely whether Pan or someone else fired the first shot. Judge Duffy repeatedly instructed Pan not to concern himself with that incident and instead focused the sentencing hearing on the pervasive cruelty and gratuitousness of Pan's acts. The court's lack of reliance is apparent from its explanation of the sentence that it imposed. Judge Duffy centered his attention (a) on the general cruelty of Pan's actions-which involved many crimes other than the Queens murder, and,

(b) on the court's desire to remove Pan from society. The record is sufficiently clear to reveal the factors weighed by Judge Duffy to meet the requirements of Rule 32(c)(1). Indeed, the lower court's statements suggest that it not only disregarded the question of who fired a gun first, but that it also ignored the entire incident.

We have considered all of Appellant's claims and find them to be without merit. The appeal is, therefore, DISMISSED.